# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA *ex rel.*
STEVEN S. SIMRING, M.D.

    Plaintiffs,

       vs.

UNIVERSITY PHYSICIAN ASSOCIATES,
UNIVERSITY OF MEDICINE AND DENTISRY
UMDNJ-UNIVERSITY HOSPITAL, UMDNJ-
NEW JERSEY MEDICAL SCHOOL, *et al.*,

    Defendants.

---

Civil Action
No. 4-3530 (PGS)

---

## DEFENDANT UNIVERSITY OF MEDICINE AND DENTISRY OF NEW JERSEY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

---

McElroy, Deutsch, Mulvaney &
Carptenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Attorneys for Defendant

Of Counsel:
Walter F. Timpone

On the brief:
Robert C. Scrivo
Kristoffer S. Burfitt

## TABLE OF CONTENTS

**TABLE OF CONTENTS**    i

**TABLE OF AUTHORITIES**    iii

**PRELIMINARY STATEMENT**    1

**BACKGROUND**    5

**LEGAL ARGUMENT**    6

    I.    RELATOR'S FEE REQUEST SUBSTANTIALLY EXCEEDS THE MARKET RATE IN NEW JERSEY AND INCLUDES AN UNREASONABLE NUMBER OF BILLABLE HOURS THAT SHOULD BE REDUCED BY THE COURT TO REFLECT A REASONABLE LODESTAR    6

    A.    Relator's Counsel's Requested Fee Rates Substantially Exceed the Market Rate in New Jersey    9

      1.    Litman Should be Granted a Reasonable Market Rate in Line With Attorneys of Similar Experience and Skill in New Jersey    11

      2.    Furst Should be Granted a Market Rate in Line with Solo Practitioners of Similar Skill and Experience in New Jersey    15

      3.    Both Attorneys' Rates Should be Reduced for Time Spent Performing Legal Research    16

    B.    Relator's Counsel Seek Payment For an Unreasonable Number of Hours Expended on This Case    18

      1.    Relator's Counsel's Excessive, Redundant and Vague Billing Entries are Non-Recoverable    20

      2.    Relator's Counsel's Billing Entries for Research are Excessive    23

3.    Relator's Counsel's Billing Entries that Bear No Relationship to the *Qui Tam* Case are Not Recoverable    26

4.    Hours Devoted by Relator's Counsel to the Recovery of the "Relator's Share" is Non-Compensable    28

5.    Relator's Counsel's Time Searching for Expert Witnesses May Not Be Recovered    30

6.    Relator's Counsel's May Not Be Recompensed For Duplicative Time Entries    31

7.    Hours Billed Following Settlement on June 19, 2009 Must Be Excluded, Including Fees Stemming from this Fee Dispute    31

C.    Calculation of the Lodestar    33

II.  NO ENHANCEMENT SHOULD BE APPLIED TO THE LODESTAR BECAUSE RELATOR HAS FAILED TO SATISFY THE CRITERIA SET FORTH BY THE SUPREME COURT TO ESTABLISH SUCH A MULTIPLIER    34

A.    Relator's Counsel Cannot Satisfy the Requirements set by the Supreme Court for Upward Modification    35

III. EXPENSES ARE NOT INCLUDED IN THE LODESTAR AND THE EXPENSES SUBMITTED BY FURST ARE INAPPROPRIATE AND NOT RECOVERABLE    38

<u>CONCLUSION</u>    40

<u>**TABLE OF AUTHORITIES**</u>

<u>**Supreme Court Cases**</u>

*Blum v. Stenson*,
    465 U.S. 886 (1984)                7, 10, 14, 38

*Hall v. Cole*,
    412 U.S. 1 (1973)                8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)                *passim*

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)                36

*Purdue v. Kenny A. ex rel. Winn*,
    __ U.S. __, 130 S.Ct. 1662 (2010)      25

*VT Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)                24

<u>**Circuit Court Cases**</u>

*Copeland v. Marshall*,
    641 F.2d 880 (D.C. Cir. 1980)        8, 19

*In re Fine Paper Antitrust Litigation*,
    751 F.2d 562 (3d Cir. 1984)          16

*In re Olsen*,
    884 F.2d 1415 (D.C. Cir. Spec. Div. 1989)  21

*Institutionalized Juveniles v. Sec. of Pub. Welfare*,
    758 F.2d 897 (3d Cir. 1985)          19

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.*,
    426 F.3d 694 (3d Cir. 2005)        14, 18, 19, 30

*Lanni v. New Jersey*,
    259 F.3d 146 (3d Cir. 2001)        7, 8, 9, 26

*Maldonado v. Houstoun*,
    256 F.3d 181 (3d Cir. 2001)          9

*Planned Parenthood of Cent. N.J. v. Attorney General of N.J.*,
    297 F.3d 253 (3d Cir. 2002)         25, 26

*Pub. Interest Research Group of N.J. v. Windall*,
    51 F.3d 1179 (3d Cir. 1995)           10, 19

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990)           *passim*

*Smith v. Philadelphia Hous. Auth.*,
    107 F.3d 223 (3d Cir. 1997)           7

*Student Pub. Interest Research Group v. AT&T Bell Labs*,
    842 F.2d 1436 (3d Cir. 1988)           7, 10, 36

*Student Pub. Interest Research Group v. Monsanto Co.*,
    721 F. Supp. 604 (D.N.J. 1989)           10

*United States ex rel. Barajas v. Northrup Grumman Corp.*,
    258 F.3d 1004 (9th Cir. 2001)           24

*United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
    41 F.3d 1032 (6th Cir. 1995)           29

**District Court Cases**

*Apple Corp. v. Int'l Collectors Soc'y*,
    25 F. Supp. 2d 480, 484-85 (D.N.J. 1998)     19, 20, 26

*Barrett v. West Chester Univ. of Pa. of the State Sys. Of Higher Educ.*,
    No. 03-CV-4978,
    2006 WL 859714 (E.D.Pa. Mar. 31, 2006)      8

*Estate of Schultz v. Potter*,
    No. 05-1169,
    2010 WL 883710 (W.D. Pa. Mar. 5, 2010)      21

*Fialka-Feldman v. Oakland Univ. Bd. or Trs.*,
    No. 08-14922,
    2010 WL 2572768 (E.D. Mich. June 23, 2010)   17, 18

*In re Meese*,
    907 F.2d 1192 (D.C. Cir. Spec. Div. 1990)     20

*Jefferson v. City of Camden*,
    2006 WL1843178 (D.N.J. 2006)          13

*Killian v. Johnson & Johnson*,
    2009 WL 537666 (D.N.J. 2009)        13

*Miller v. Holzman*,
    575 F. Supp. 2d 2 (D.D.C. 2008)        21, 28

*United States v. NCH Corp.*,
    Nos. 98-5268, 05-881,
    2010 WL 3703756 (D.N.J. Sep. 10, 2010)    22, 23, 32

*United States ex rel. Doe v. Pa. Blue Shield*,
    54 F. Supp. 2d 410 (M.D.Pa. 1999)      28

*United States ex rel. Educ. Career Dev., Inc. v. Cent. Florida Reg'l Workforce Dev. Bd., Inc.*,
    2007 WL 1601747 (M.D. Fla. 1997)      27, 28

*United States ex rel. Thompson v. Walgreen Co.*,
    621 F. Supp. 2d 710 (D.Minn. 2009)     29

**State Court Cases**

*Rendine v. Pantzer*,
    661 A.2d 1202 (N.J. 1995)        7, 8, 10, 19

*Walker v. Giuffre*,
    2 A.3d 1165 (N.J.App.Div. 2010)     10

**Federal Statutes**

31 U.S.C. § 3730        7, 29

## PRELIMINARY STATEMENT

Relator Steven Simring, M.D., ("Relator"), moves to collect attorneys' fees, costs and expenses as a result of a civil *qui tam* action brought against the University of Medicine and Dentistry of New Jersey ("UMDNJ"). Throughout the case, Relator was primarily represented by two attorneys, Harry Litman, Esq. ("Litman") and Henry Furst, Esq. ("Furst," together "Relator's Counsel"). To be clear, UMDNJ has never denied that Relator, as a prevailing party, is entitled to reasonable attorneys' fees. That right is statutory. Throughout settlement negotiations conducted since formally settling the underlying matter, UMDNJ has repeatedly asserted its commitment to pay a reasonable fee, in line with market rates in New Jersey. However, both during settlement discussions and in the instant motion, Relator asks this court to award exorbitant fees that are out of line with the established market rate in New Jersey for the services provided. The number of hours worked on this case by Relator's Counsel are similarly unreasonable. Their primarily block-billed time entries show work that was "excessive, redundant and otherwise unnecessary," *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and should therefore be excised from the ultimate award of attorneys' fees.

From the inception of this case through December 17, 2010, Relator's Counsel seeks attorneys' fees, costs, and expenses

totaling $1,081,570.   This amount is based upon the following unreasonable rates and hours:

- Furst billed 391.8 hours at a rate of $450 per hour, totaling $176,310.00
- Litman billed 846.6 hours at a rate of $825 per hour, totaling $698,445.00
- Relator's Counsel claims expenses totaling $26,553.18
- 20% requested lodestar enhancement, bringing the total to $1,081,570.00

The rates billed by Relator's counsel are wholly out of line with the prevailing market rates charged by attorneys of similar experience and skill in New Jersey.   Instead, they represent the absolute highest end of rates charged by the largest firms in the state.   Further, many of the hours charged are duplicative and unnecessary, and the majority of billing entries provided by Relator's Counsel are vague at best.   Both attorneys block-billed their time, making it impossible to determine the amount of time spent on inappropriate tasks, such as legal research conducted by a professed expert in the False Claims Act ("FCA").

Resolution of this issue has been unduly prolonged due to Relator's adamant refusal to recognize an appropriate market rate for the work performed by Relator's Counsel.   UMDNJ has not dragged its feet or been reticent to recognize its obligation to pay.   Relator expresses shock at UMDNJ's apparent audacity in requesting an accounting and disputing extraordinarily high hourly rates, and protests the "haircut" sought by UMDNJ.   This "haircut," though, is necessary to manage the unruly mess

2

created by the exorbitant rates and unnecessary hours memorialized in the vague block-billed time entries produced by Relator's Counsel.

While Relator's Counsel played a role in the outcome of this case, their claim to have "actively participated" in, amongst other things, investigation, analysis, drafting, negotiations, litigation and settlement of this case are disingenuous. Relator's Counsel did not litigate this case. No discovery was conducted. No depositions were taken. No interrogatories were propounded. No demands were made for production of documents. No experts were retained. Litman never even filed a notice of appearance or a *pro hac vice* admission request. He is not admitted to practice in New Jersey. Strikingly, between January 19, 2006 and March 16, 2009 – a period of 38 months in which Relator's counsel insists they were hard at work litigating this matter – absolutely nothing occurred in this case. No motions. No conferences. No court orders. Nothing.

Similarly, little time was spent investigating the case as the Complaint was filed four days after Furst's initial meeting with Relator. Once the complaint was filed, Relator's Counsel rode the government's coattails to settlement. Indeed, after the proverbial whistle was blown, Relator's Counsel stepped to

the side and handed the reins of the investigation and litigation over to the government.

There was nothing "complex" about the civil aspect of this case. UMDNJ entered into a Deferred Prosecution Agreement ("DPA") with the government in December 2005, thereby accepting responsibility for its actions. The DPA in effect established liability in the *qui tam* action brought by Relator. All that remained was to determine the appropriate amount of damages, a task that cannot fairly be called "complex."

Relator's Counsel should be awarded attorneys fees in line with the prevailing market rate in New Jersey. Litman, as an experienced FCA practitioner with a substantial legal background, should receive a rate similar to the $500 per hour charged by the Honorable Herbert Stern, Esq., the attorney who acted as the Federal Monitor to UMDNJ. Furst, as a solo practitioner, should receive a rate that reflects the prevailing rate for solo practitioners in New Jersey, $350 per hour. In addition, for tasks performed by both that should have been performed by an associate or junior attorney, such as legal research, their rates should be reduced to $250 per hour. Time entries that are vague, unnecessary and duplicative must be deducted from the award. Time spent negotiating the Relator's share and that otherwise bears no relation to the case must be rejected. Hours expended following the June 19, 2009 settlement

must be denied. Relator's Counsel's requested expenses should be reduced to $1,020 as Litman has provided no documentation of expenses and $17,616 of Furst's expenses, accounting for sums paid to Steven Altman, Esq., ("Altman") must be rejected. Relator's request for an upward adjustment of the lodestar by 20% should be denied, as this case was not overly complex, no novel legal theories were argued, and recovery was practically assured following UMDNJ's entry into the DPA.

Given these necessary reductions, the appropriate fees, costs and expenses due to Relator's Counsel are approximately $291,630.26. This total is comprised of (1) $201,300.00 in fees for Litman, (2) $89,310.00 in fees for Furst, and (3) $1,020.26 in expenses.

## BACKGROUND

Relator initiated this civil action under the *qui tam* provisions of the FCA on July 23, 2004. Relator alleged that University Hospital ("UH") billed Medicare and Medicaid for the same services that were billed by its faculty practice plan, co-defendant University Physician Associates. The United States Attorney's Office ("USAO") investigated this exact issue. That investigation resulted in UMDNJ entering into the DPA with the USAO in December 2005. The USAO recused itself from the instant action, which was handled by the Department of Justice ("DOJ") in Washington, D.C. Plaintiffs filed an Amended Complaint in

September 2005.   There was a partial lifting of the Seal in January 2006, followed by no docket entries for nearly three years. DOJ formally intervened in 2009.

On June 19, 2009, the United States and UMDNJ settled the matter for $4.45 million.   Recognizing UMDNJ's precarious financial position, the government settled for single damages, not the treble damages authorized by statute.   Relator's share of the settlement was $800,000.   Relator's claim for attorneys' fees, costs, and expenses were not part of that settlement.   The Court retained jurisdiction over the matter to provide the parties with an opportunity to amicably resolve the attorneys' fees issue.

The parties appeared before the Honorable Madeline Cox Arleo, U.S.M.J. on two occasions to attempt to settle this dispute.   Neither settlement conference was successful.   Relator now moves before this Court, seeking to recover excessive and unreasonable attorneys' fees, costs and expenses.

## <u>LEGAL ARGUMENT</u>

I.  **RELATOR'S FEE REQUEST SUBSTANTIALLY EXCEEDS THE MARKET RATE IN NEW JERSEY AND INCLUDES AN UNREASONABLE NUMBER OF BILLABLE HOURS THAT SHOULD BE REDUCED BY THE COURT TO REFLECT A REASONABLE LODESTAR**

The FCA permits a relator to recover "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" against a settling defendant.  31 U.S.C. §§ 3730(d)(1)-(2).  To fix the size of the fee award, a court must determine the appropriate billing rate for the party's attorneys in the relevant community, as well as the number of hours those attorneys reasonably expended on the action.  *See Blum v. Stenson*, 465 U.S. 886, 888 (1984).  The product of an attorney's hourly rate and the number of hours spent is referred to as the "lodestar."  *See, e.g., Student Pub. Interest Research Group v. AT&T Bell Labs*, 842 F.2d 1436, 1441 (3d Cir. 1988).

The Relator bears the burden of producing evidence that its fees correspond to the market rate for the legal services performed.  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (citing *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)).  The Relator must also provide proof that the hours claimed are reasonable.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  Courts must scrutinize the evidence presented in support of the fee application.  *Rendine*

*v. Pantzer*, 661 A.2d 1202, 1226 (N.J. 1995) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)("Trial courts should not accept passively the submission of counsel to support the lodestar amount.")). This demanding standard is further heightened when the paying party is a public institution. *Barrett v. West Chester Univ. of Pa. of the State Sys. Of Higher Educ.*, No. 03-CV-4978, 2006 WL 859714, *2 (E.D.Pa. Mar. 31, 2006) (requiring a "particularly careful" review of fees in such a situation). This is especially true in the context of a cash strapped public educational institution, where the responsibility to pay the ultimate attorneys' fees awarded will rest with taxpayers and the quality of education provided to students of the university may be negatively impacted. *Id.* at *18.

Fee awards are an equitable matter. *Hall v. Cole*, 412 U.S. 1, 4-5 (1973). When the party seeking fees fails to meet its burden, or when it requests an unreasonably high rate or an unreasonable number of hours, the court can and should exercise its equitable discretion to reduce the fee to the market rate and the hours to a number reasonably required to perform the billed-for work. In *Lanni*, for instance, the respondent to a fee application produced evidence to show that the market rate was "well below the rates claimed" by the fee applicant. 259 F.3d at 150. The Third Circuit remanded the case to allow the

District Court to determine the applicable market rate and appropriately reduce the applicant's request. *Id.* Likewise, in *Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001), the court adjusted an applicant's unreasonably high rates to match a market rate stated in a Community Legal Services, Inc. fee schedule. The court determined that the rates contained in the fee schedule were "a fair reflection of the prevailing market rates" and denied any "hourly rates that [were] inconsistent with them." *Id.* at 187-88 (internal citations omitted).

Relator's Counsel has requested fees above the New Jersey market rate and hours that were excessive and inappropriate for the tasks performed. The rates should be reduced so that they are in line with the prevailing market rate in New Jersey, and the hours should be whittled down to an appropriate amount of time expended for the services provided.

## A.   Relator's Counsel's Requested Fee Rates Substantially Exceed the Market Rate in New Jersey

The first step of the lodestar calculus is to determine the appropriate, reasonable rate that may be charged by the fee petitioner. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rode*, 892 F.2d at 1183 (3d Cir. 1990). In this case, the fee applicants seek to be compensated at rates that far exceed the appropriate, reasonable market rates that they are entitled to under the statute and case law in the District of New Jersey.

The attorneys' billing rate "is not dispositive." *Pub. Interest Research Group of N.J. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Instead, a reasonable market rate is one "which is adequate to attract competent counsel, but which does not produce windfalls to attorneys." *Student Pub. Interest Research Group of N.J.*, 842 F.2d at 1448. Courts are required to apply the prevailing market rate in the relevant legal community, *Blum*, 465 U.S. at 895; *Rode*, 892 F.2d at 1183; *Rendine*, 661 A.2d at 1227, and must determine a reasonable rate that is "fair, realistic, and accurate." *Walker v. Giuffre*, 2 A.3d 1165 (N.J.App.Div. 2010)(internal citation omitted). Thus, an "out of town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged." *Pub. Interest Research Group of N.J.*, 51 F.3d at 1186. Plaintiffs must be allowed to obtain counsel of their choice, but they may not be "permitted to impose additional costs on defendants for . . . go[ing] outside the district when ample competent local counsel [is] available." *Id.* at 1187 (citing *Student Pub. Interest Research Group of N.J. v. Monsanto Co.*, 721 F. Supp. 604, *modified on other grounds*, 727 F. Supp. 876 (D.N.J.), *aff'd*, 891 F.2d 283 (3d Cir. 1989)).

The hourly rates requested by Relator's Counsel are out of line with the prevailing rates charged in New Jersey. The $825

per hour demanded by Litman and the $450 demanded by Furst are both excessive and unreasonable.   As such, this Court should exercise its equitable discretion to reduce these rates to a reasonable amount, in line with amounts charged by attorneys of like skill and experience in New Jersey.   In place of their requested rates, Litman should be awarded fees at the rate of $500 per hour, a "reasonable hourly rate for a highly skilled and credentialed District of New Jersey practitioner with roughly 25 years of experience."   (Expert Report of William B. McGuire, Esq. ("McGuire Report"), attached hereto as Exhibit A, at 18).   Similarly, Furst should be awarded fees at the rate of $350 per hour.   (McGuire Report at 20).

**1.  Litman Should be Granted a Reasonable Market Rate in Line With Attorneys of Similar Experience and Skill in New Jersey**

Litman is a well-credentialed lawyer of twenty-three years. He submits that his billing rate is $825 per hour, and he demands this rate be applied to the fees owed by UMDNJ.   In support, he relies on a National Law Journal ("NLJ") survey of law firm billable rates.   That survey reveals that partners at New Jersey law firms McCarter & English and Lowenstein Sandler charge up to $825 per hour and partners at Gibbons, P.C. charge up to $790 per hour.  (*See* Plaintiff's Exhibit D).   Missing from Relator's analysis of the survey were two other New Jersey law firms: Archer & Greiner, which charges a maximum rate of $560

11

per hour, and McElroy, Deutsch, Mulvaney & Carpenter, which charges a maximum rate of $550 per hour. *Id.* Notably, UMDNJ pays a maximum of $215 per hour to partners and $185 per hour for associates for its outside litigation counsel.

What is clear is that these numbers do not represent the market rate for similar services performed by a highly qualified litigator in New Jersey, practicing between twenty and twenty-five years. Instead, the highest rates at large law firms are often charged by transactional partners. (McGuire Report at 13). In New Jersey, the highest rates charged by litigation partners at law firms range from $435 to $725 per hour. (McGuire Report at 13). Outliers to this rule possess more experience than Litman and all work at significantly larger law firms than those with which Litman is affiliated.[1] (McGuire Report at 13).

Litman's reliance on bankruptcy cases to justify the rate he seeks is misplaced. He directs the Court to fees charged by New York attorneys practicing in New Jersey's Bankruptcy Courts. This skews the facts. The lion's share of fee authority in this District consists of cases in which more experienced attorneys than Litman are compensated at substantially lower rates. For instance, in *Jefferson v. City of Camden*, 2006 WL 1843178

---

[1]Litman is the principal of a two-person law firm, the Litman Law Firm, and Of Counsel at Phillips and Cohen, LLP, a seventeen-person law firm.

(D.N.J. 2006), the Court approved an hourly rate of $395 per hour for an attorney admitted to the bar in 1968 – nearly two decades before Litman.   Similarly, in *Killian v. Johnson & Johnson*, 2009 WL 537666 (D.N.J. 2009), the Court approved a fee of $450 per hour for a partner who graduated law school in 1982 – four years before Litman.   These rates represent the market as it actually exists in New Jersey.

Litman should receive a rate no higher than that charged by the Honorable Herbert Stern, who served as the Federal Monitor to UMDNJ under the DPA.   Judge Stern was admitted to practice law in 1961.   He served as the United States Attorney for the District of New Jersey and as a United States District Court Judge, in New Jersey and as the specially designated judge for the United States Court for Berlin.   Perhaps Litman is an attorney of skill similar to Judge Stern, but he is certainly without the same experience, having been admitted to practice for twenty-six years less than Judge Stern.   Judge Stern's billing rate, taking into account that he was working for a public institution, was $500 per hour.   As noted by Mr. McGuire, Litman should be "honored to be compensated at the same level as an established luminary of the bench and bar – a luminary with far more experience than Mr. Litman."   (McGuire Report at 18-19).

13

Relator's reliance on rates charged by firms such as Buchanan, Ingersoll & Rooney in Pittsburgh, Foley & Lardner in Milwaukee, or Loeb & Loeb and Chadbourne & Park in New York is equally inappropriate as they are outside the forum of New Jersey. The Court should completely disregard them. What occurs "just across the river" has no bearing on the market rate in New Jersey.

Litman asserts that he has "numerous clients" who have retained him at the rate of $825 per hour, yet he "does not specify if those clients are *qui tam* clients that may have no reasonable expectation of actually paying him any portion of his hourly fees." (McGuire Report at 10 n.1). Litman further fails to note the location of these purported clients. One would assume that, if they were in New Jersey, he would have trumpeted it. The forum in which the matter is litigated dictates the hourly rate. *See Blum*, 465 U.S. at 888. The need for expertise in a given area of law may justify a deviation from the forum rate rule when the applicant can show that only counsel from a "distant district" possesses the requisite experience and skill to handle the case. *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). Relator has produced absolutely no evidence to show that Litman's services were uniquely necessary to this litigation. Furst's billing records disclose no conversations with or

attempts to retain co-counsel in New Jersey.  Instead, it appears that he went directly to Litman.  There are assuredly attorneys in New Jersey with the government experience and expertise in handling FCA cases necessary to handle this case. Because Litman chose to bring his services into New Jersey, he is entitled to only the market rate paid in New Jersey.

2.  **Furst Should be Granted a Market Rate in Line with Solo Practitioners of Similar Skill and Experience in New Jersey**

Furst has been a practicing member of the bar since 1977. He was educated at Princeton University, where he graduated in 1974, and Rutgers School of Law Newark where he graduated in 1977.  His practice appears to be "grounded in a core of criminal defense litigation."  (McGuire Report at 9).  Furst seeks legal fees at the rate of $450 per hour.  He provides little support for his billing rate other than the opinion of Raymond Brown, Esq., a well respected member of the New Jersey bar.

Furst's experience and reputation does not rise to the level of preeminent New Jersey attorneys who practice predominantly in the area of criminal defense.  (McGuire Report at 19).  In addition, his "educational pedigree and False Claims Act experience" are a mere shadow of his co-counsel in this matter.  (McGuire Report at 20).

In a similar vein, it is not entirely clear why Furst's services were required after Litman was brought into the case. Especially considering that much of this case was handled by DOJ in Washington, D.C., there was little need for local counsel who could "provide useful advice as to the unique attributes of the local jurists and attorneys involved in the case." (McGuire Report at 20).

Based upon Litman receiving a fee of $500 per hour for his services in this case, it would be unreasonable to award a fee of $450 per hour to Furst. Instead, a billing rate of $350 per hour would be appropriate for the work performed by Furst in this case.

### 3. Both Attorneys' Rates Should be Reduced for Time Spent Performing Legal Research

The legal research conducted by Relator's Counsel is problematic for two reasons. First, it is not compensable at the rates sought by Relator's Counsel. Second, it was unnecessary given Litman's expertise in FCA matters, was not related to the case, and was duplicative (discussed *infra*, I(B)(2)). All legal research conducted by Relator's Counsel should be reduced to associate level rates. While compensating a partner at one rate may be reasonable for most lawyerly tasks, "the court may find that the reasonable rate of compensation differs for different activities." *In re Fine Paper Antitrust*

16

*Litigation*, 751 F.2d 562, 583 (3d Cir. 1984)(internal citations omitted)(finding that "[p]artners will not be compensated at partner-level rates for tasks which are customarily performed by junior associates[.]").   Indeed, paying clients will generally refuse to pay for research time billed at partner level rates. (McGuire Report at 15).   Litman made billing entries for "legal research" on seventy-four separate occasions, primarily in block-billed entries totaling 178.4 hours[2].   Thus, he claims that nearly one-quarter of his entire time spent on the underlying matter was for legal research.   That is a significant amount of time given that there were no motions filed in the case and the proclaimed expertise of Litman and Philips & Cohen, the pre-eminent FCA firm in the country.   It is patently unreasonable for an experienced lawyer with Litman's background in the field to spend close to 200 hours conducting his own research at an hourly rate of $825 and not utilize junior attorneys to conduct research.

The Eastern District of Michigan's decision in *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, No.08-14922, 2010 WL 2572768 (E.D. Mich. June 23, 2010), relied on by Relator's Counsel, is distinguishable from the within matter.   In *Fialka-Feldman*, the court rejected an argument that plaintiff's lead

---

[2] This amount, and all other figures cited by UMDNJ throughout this brief, is exclusive of any research conducted following settlement of the underlying case (discussed *infra*, I(B)(7)).

counsel should have charged an associate's rate for time spent conducting legal research, stating that "[t]his objection may carry more weight if Plaintiff had been represented by a law firm with several tiers of associates and partners." *Fialka-Feldman*, 2010 WL 2572768 at *6. Relator's Counsel would have this court believe that it should not accept a lower rate for conducting research because both Litman and Furst work at small firms without "several tiers" of attorneys. In the next breath, though, Relator's Counsel compares the fees they seek to charge to those charged by McCarter & English, Gibbons and Lowenstein Sandler, some of the largest firms in the country, let alone the state of New Jersey. These firms all have associates who would presumably conduct research at a rate significantly lower than that charged by partners. Relator's Counsel cannot have it both ways. Instead, Relator's Counsel's rate for time spent conducting legal research should be reduced to $250 per hour, a reasonable associate's rate in New Jersey, and a rate that is in fact higher than UMDNJ pays partner level attorneys as outside litigation counsel. (McGuire Report at 21).

**B.   Relator's Counsel Seek Payment For an Unreasonable Number of Hours Expended on This Case**

The next step in the lodestar calculation is to determine the number of hours reasonably expended on the case. *Hensley*, 461 U.S. at 433. "A prevailing party is not automatically

entitled to compensation for all the time its attorneys spent working on the case." *Interfaith Cmty. Org.*, 426 F.3d at 711. "It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland*, 614 F.2d at 891; *accord Interfaith Cmty. Org.*, 426 F.3d at 711. The party seeking fees must set forth the requested hours "in sufficient detail to permit the trial court to ascertain the manner in which the billable hours were divided amongst the various counsel." *Rendine*, 661 A.2d at 1227. Courts are charged with excluding hours that are "excessive, redundant, or otherwise unnecessary." *Id.; accord Rode*, 892 F.2d at 1183; *Windall*, 51 F.3d at 1188. Courts should also exclude hours due to "inadequate documentation, duplication of effort, unreasonableness of hours expended, or lack of relation to the results obtained." *Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 484-85 (D.N.J. 1998). Finally, courts should further exclude hours that were "spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Institutionalized Juveniles v. Sec. of Pub. Welfare*, 758 F.2d 897, 919 (3d Cir. 1985)(internal citations omitted).

*Qui Tam* actions, by their very nature, fee-shift if the relator is successful. Because of Relator's Counsel's self-professed extensive experience in *Qui Tam* litigation, Litman and

Furst had to be aware when filing the underlying *qui tam* action that they would be required to support the time and tasks associated with representing Relator.  In this case, Litman seeks recovery for 846.6 hours of alleged work, and Furst seeks recovery for 391.8 hours of alleged work.  Excessive, redundant, vague and duplicative time entries of 488.6 hours must be excised from Litman's time, and 152.7 hours must be removed from Furst's time.

1.   **Relator's Counsel's Excessive, Redundant and Vague Billing Entries are Non-Recoverable**

Relator's Counsel's time records are riddled with vague entries.  Vague time entries are often not paid by clients. (McGuire Report at 16).  Numerous entries by both Litman and Furst merely state "call with" or "conf with" (as in original) but provide no other information as to the call or conference's purpose.  Such vague and inadequately documented billing entries are unreasonable and should be stricken.  *Rode*, 892 F.2d 1183; *Apple Corp.*, 25 F. Supp. 2d at 484-85; *accord In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. Spec. Div. 1990)(time entries in which "no mention is made of subject matter of a meeting, telephone conference or work performed during hours billed" are "not adequately documented.").  Litman's billing records contain sixty-three such vague entires, accounting for 35.7 hours, which must be excluded.  Similarly, Furst's billing records contain

thirty-three vague entries, accounting for 12.3 hours, which also must be excluded.

To compound the problem, Litman and Furst block-billed an additional one-hundred seventy-nine entries containing the vague "conf with" language. Sophisticated clients often forbid block billing. (McGuire Report at 16). Block billing is likewise viewed by the courts with disdain. "[B]lock billing 'make[s] it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discrete activity,' leaving the court 'to estimate the reduction to be made because of such insufficient documentation.'" *Miller v. Holzmann*, 575 F. Supp. 2d 2, 37 (D.D.C. 2008)(quoting *In re Olsen*, 884 F.2d 1415, 1428-29 (D.C. Cir. Spec. Div. 1989)). Thus, a party "block bills at his own peril." *Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *7 n.14 (W.D.Pa. Mar. 5, 2010). Litman's time entries include one-hundred seventy-two block billed entries, totaling 423.8 hours. Furst's entries contain seven entries, totaling 18.1 hours. Because of the block-billed nature of these entries, it is impossible to determine how much, if any, time was actually dedicated to the various tasks identified in each entry.

When a fee applicant submits block billed time records, "they perhaps should be given the opportunity to specify and/or clarify their entries to the satisfaction of the Court."

(McGuire Report at 22).  However, considering that some the time entries in this case were recorded more than five years ago, it would be an exercise in futility to permit Relator's Counsel an opportunity to clarify their time records at this late stage of the dispute.  Thus, UMDNJ proposes that one third of these entries, or 141.3 hours from Litman and 6.0 hours from Furst, be deducted from Relator's Counsel's time to account for the vague and inappropriate billings.

This approach is consistent with the approach recently taken by the Court in *United States v. NCH Corp.*, Nos. 98-5268, 05-881, 2010 WL 3703756 (D.N.J. Sep. 10, 2010), a decision that Relator clearly misreads.  Rather than supporting the practice of block billing, the Court held that "when there is confusion due to block billing, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion by task billing."  *Id.* at *5.  The Court significantly reduced the fee applicant's request, in some instances by up to 50%, due to the confusion caused by the applicant's use of block billing. *Id.* ("the significant use of 'block billing' employed by [the fee applicant], in this instance, thwarts the Court in the performance of its review obligations and does not reasonably meet [the applicant's] obligation to provide 'some fairly definite information as to the hours devoted to various general activites' and by whom.").  Relator's Counsel knew at the

22

inception of this case that they would be required to provide billing records sufficient to allow this Court to perform its review in order to determine whether a reasonable number of hours were spent on various tasks performed during the representation.   As stated in *NCH Corp.*, the blame for the confusion created by Relator's Counsel's decision to block bill, and the inability of the court to determine the amount of time spent on discrete, inappropriate tasks, such as the vague "conf with" entries listed above, rests solely with Relator's Counsel. UMDNJ should not be forced to pay exorbitant amounts simply because Relator's Counsel did a poor job of timekeeping. UMDNJ's request to reduce Relator's Counsel's excessive block-billed entries by 33% is therefore appropriate and in line with approaches previously taken in the District of New Jersey.

2.   **Relator's Counsel's Billing Entries for Research are Excessive**

When attempting to fee shift, counsel is mandated to properly account for time spent and to do so judiciously and economically. *See Hensley*, 461 U.S. at 434. Relator's counsel did neither.   A district court reviewing a fee application is vested with the discretion to (1) determine that the hours expended on a certain task were excessive, and (2) determine "that a certain number of hours would be a reasonable number of hours to expend on that task." *Rode*, 892 F.2d at 1187.   Given

Litman's national reputation for being a FCA lawyer, Relator's Counsel spent an excessive amount of time conducting legal research. This Court should cut the time spent performing legal research in half.

As noted above, research appears in seventy-four of Litman's time entries, totaling 178.4 hours. Considered another way, this amounts to just over twenty-two 8-hour work days, or more than four full work weeks, spent researching by a professed expert in the FCA. The topics block billed as research by Litman include, among others: privilege, state whistleblower suits, joint and several liability, state and federal Medicare and Medicaid regulatory scheme, overpayments, possible conflict, other states regulatory schemes re: payor of last resort, *Stevens*[3] and related issues, Eleventh Amendment, falsity and FCA, public entities, information sharing, *Barajas*[4], derivative claim, original source, catalyst theory, Third Circuit Statute of Limitations, causation, administrative termination, possible FOIA action, designation of parties, scope of release, admissions and collateral liability, possible bribery, settlement agreement, government intervention, liability for omissions, costs and fees, settlement in multi-defendant cases,

---

[3] *VT Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).
[4] *United States ex rel. Barajas v. Northrup Grumman Corp.*, 258 F.3d 1004 (9th Cir. 2001).

and Federal Rule of Evidence 408.   Only the *Stevens*/Eleventh Amendment entries even appear relevant to the within matter as UMDNJ considered and discussed with DOJ filing a motion to dismiss on Eleventh Amendment grounds since UMDNJ is a State entity.

Furst recorded fourteen separate block billed entries for research, which totaled approximately 45 hours.   Furst also researched several of the topics that Litman researched.   These included: Medicaid billing regulations, *Stevens*, *Barajas*, catalyst theory, Eleventh Amendment, and scope of release. These entries should be disregarded entirely as redundant or duplicative.

Four of Litman's entries, totaling 2.5 hours worth of work, were not block billed.   The remaining sixty-one entries, encompassing 175.9 hours, are block billed entries.   Five of Furst's entries, totaling 15.6 hours of work were not block billed, with the remaining 29.5 hours appearing as part of block billed entries.   Again, one-half of this time should be rejected.   At least six of the research projects are duplicative.   A reduction for duplication of effort is warranted when "the attorneys are *unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1188 (emphasis in original).   Given Litman's stated expertise in FCA litigation and familiarity with the instant matter, Furst's research of the same topics as Litman is

25

duplicative. *See Planned Parenthood of Cent. N.J. v. Attorney General of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002)("[T]he attendance of additional counsel representing the same interests as the lawyers actually conducting the litigation is wasteful and should not be included in a request for counsel fees from an adversary"); *see also Lanni*, 259 F.3d at 151 ("Given [counsel's] professed expertise in this area, it would not have been unreasonable to expect her to conduct the trial alone or with the help of an associate" as opposed to another partner). Further, as it was unreasonable for Relator's Counsel to charge excessive partner rates for research, so too is it unreasonable to conduct over 220 hours of combined research in an area of law in which Litman presents himself as an expert.  As such, one half of the total time spent, whether block billed or not, should be deducted from Relator's Counsel's time entries.  Such a reduction would remove 89.2 hours from Litman's total and 22.5 hours from Furst's total.

### 3.  Relator's Counsel's Billing Entries that Bear No Relationship to the *Qui Tam* Case are Not Recoverable

Relator's Counsel's time records reveal that they expended considerable time on matters that lacked a relationship to its claims against UMDNJ.  Time spent that lacks a relationship to the results obtained in a *qui tam* case is not compensable. *Apple Corps.*, 25 F. Supp. 2d at 484-85.  For instance, Relator's

Counsel seek compensation from UMDNJ for time spent litigating its case against UPA. UMDNJ should not be required to pay legal fees that Relator allegedly incurred prosecuting his case against other defendants; here UPA and its directors and officers. Should Relator prevail in his ongoing FCA case against UPA, he will be entitled to fees from those defendants. Any award of fees for tasks performed in connection with prosecuting Relator's claims against other defendants now could amount to an improper double recovery.

Relator's Counsel further seek compensation for time spent reviewing newspapers articles about unrelated events at UMDNJ, such as break-ins at one of its administrative offices and FCA cases brought against other hospitals. All told, Litman spent 1.3 hours of non-block-billed time pursuing tasks unrelated to the *qui tam* case. Furst spent 20.1 hours pursuing such unrelated tasks. These hours must be excluded from the award of attorneys' fees.

Complicating this analysis is the fact that Relator's Counsel's block-billed time entries commingle unrelated tasks with purportedly related ones. For example, on September 14, 2005, Litman spent 9.4 hours on drafting the Amended Complaint and "review of materials re CMS manuals." The latter work is not compensable because it represents time spent getting up to speed. *United States ex rel. Educ. Career Dev., Inc. v. Cent.*

*Florida Reg'l Workforce Dev. Bd., Inc.,* 2007 WL 1601747, *4 (M.D. Fla. 1997)("[T]ime spent 'getting up to speed' or learning about the principles of qui tam actions, which does not advance the case and was not a result of Defendants' actions, is not reasonably billed to a client or one's adversary."). Such entries cannot be separated with accuracy and must be construed against the movant. *See Miller*, 575 F. Supp. 2d at 37. Under the same principal, the time Litman expended determining whether a conflict of interest existed amongst his litigation team at Phillips & Cohen is not recoverable. *See, e.g., United States ex rel. Doe v. Pa. Blue Shield*, 54 F. Supp. 2d. 410, 419 (M.D.Pa. 1999). Litman unreasonably block-billed approximately 16.9 hours to tasks that were unrelated to his representation of Relator in this action and are not recoverable. Furst likewise unreasonably block-billed 9.4 hours on non-recoverable tasks.

Like the vague entries above, the time acknowledged from Relator's Counsel's block-billed entries should be reduced. UMDNJ again proposes that one third of these entries should be disallowed, resulting in 5.6 hours being deducted from Litman's total and 3.2 hours being deducted from Furst's total.

### 4.   Hours Devoted by Relator's Counsel to the Recovery of the "Relator's Share" is Non-Compensable

Relator's Counsel seek to recover fees for the time they expended negotiating Relator's share. A relator's share is set

between 15 percent and 25 percent of the proceeds of the action or settlement of the claim, "depending upon the extent to which the relator contributed to the prosecution of the action."[5]   31 U.S.C. 3730(d)(1).   Typically, a relator's counsel expends time advocating to the Government for a greater share of the recovery for his client.   *See, e.g., United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1045-46 (6th Cir. 1995); *United States ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d. 710, 727 (D.Minn. 2009).   However, time spent by a relator's counsel negotiating or litigating the relator's share with the United States is not recoverable in a fee application. *Taxpayers Against Fraud*, 41 F.3d at 1045-46; *accord Thompson*, 621 F. Supp. 2d. at 727 ("The greater weight of authority disallows compensation for attorney's fees and costs incurred in connection with the relator's share negotiation/litigation.").

Here, Litman spent 0.9 hours of non-block-billed time negotiating the relator's share.   Furst spent 27.2 hours.   These hours must be excluded from the award of attorneys' fees in this case.

In addition, Litman spent an additional 7.2 hours and Furst an additional 7.6 hours of block-billed time negotiating the relator's share.   As with vague entries and unrelated entries,

---

[5]   In this case, Relator received $800,000, roughly 18% of the $4.45 million proceeds of the action.

UMDNJ proposes that Relator's Counsel's time be reduced by one third, resulting in 2.4 hours being deducted from Litman's total hours billed and 2.5 hours being deducted from Furst's hours.

### 5. Relator's Counsel's Time Searching for Expert Witnesses May Not Be Recovered

Relator's Counsel's time records indicate that Litman spent 4.6 hours of non-block-billed time in order to find an expert for the case. Litman spent an additional 39.4 hours of block-billed time on this issue. Furst spent 22.1 hours, all non-block billed, on attempting to retain an expert. All of the non-block billed time and one third of Litman's block-billed hours, or 13.1 hours, should be excluded. While the Third Circuit has approved recompensing fees to experts who do not testify, *Interfaith Cmty. Org.*, 426 F.3d at 716, this is not a request for expert fees. Instead, these are hours that were expended by Relator's Counsel to obtain an expert in the first instance – but no expert was ever retained as no expert was needed. The underlying case is one in which liability was a forgone conclusion because of UMDNJ's entry into the DPA. No expert reports were written, no depositions of experts were taken, and because Litman is a purported expert in the FCA, certainly no experts were necessary to advise Relator's Counsel. As such, this time must be excluded from Relator's fee request.

**6.   Relator's Counsel's May Not Be Recompensed For Duplicative Time Entries**

When seeking fees, the requesting attorney is required to review his billing records to exclude excessive, redundant and unnecessary fees, "just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.  Relator's counsel did not fulfill the ethical obligation to review their billing entries, as is evident by the duplicative billing entries submitted with their motion.  For example, Litman's time records include two entries on October 26, 2007 with identical descriptions.  One of these entries, therefore, must be excluded.  In total, Litman's time records include 5.2 hours of duplicative time entries.  While 5.2 hours may not seem like a great deal of time, at Litman's requested rate of $825 per hour, Relator's oversight could cost UMDNJ $4,290.00, an expensive mistake.  Litman's hours must therefore be reduced by a minimum of 5.2 hours.

**7.   Hours Billed Following Settlement on June 19, 2009 Must Be Excluded, Including Fees Stemming from this Fee Dispute**

The underlying *qui tam* action filed by Relator was settled on June 19, 2009.  Despite the settlement, Relator's Counsel has continued to bill the file, both substantively and for fees sought in connection with this fee dispute.  Since the

settlement date, Litman has billed an additional 100.1 hours. Furst has billed 14.2 hours in that same time period.  To the extent that these hours were billed for legal work on the underlying case, they must be disallowed.  It would be absurd to permit Relator to collect on hours expended after the resolution of the case.  Such hours are certainly not UMDNJ's responsibility.

Ordinarily, the fee applicant may recover fees sought in connection with a fee dispute.  However, in cases such as this where the fee applicant causes the ongoing delay and need for litigation, fees and costs in connection with the application should not be awarded.  *NCH Corp.*, 2010 WL 3703756 at *11 ("This fee dispute is caused, in part, because of confusions arising out of [the fee applicant]'s billing practices.  This Court will not reward any ambiguity associated with [the fee applicant]'s invoices by awarding fees or costs for this application.").  As in *NCH Corp.*, it is the fee applicant's poor billing practices, e.g. block billing, vague entries, and excessive and redundant entries, in this case that have caused this fee dispute to go unresolved since the underlying case settled.  Since the settlement date, UMDNJ has reasonably sought an accounting for the excessive hours billed and unreasonably high rates charged by Relator's Counsel.  Relator's Counsel's bullish refusal to accept market rates, together with their slipshod billing

practices – especially when they knew that they would be required to substantiate their time and legal work to justify their fees under the statute – were the primary cause of this dispute.  As such, UMDNJ should be relieved of paying any fees in connection with pursuing this fee dispute.

**C.   Calculation of the Lodestar**

Following determination of a reasonable hourly rate and a reasonable number of hours spent working on the case, the Court must calculate the actual lodestar amount by multiplying the rate by the reasonable hours expended.  *Rode*, 892 F.2d at 1183. Litman's lodestar should be calculated as follows:

| | |
|---|---|
| Hours requested: | 846.6 |
| Less non-Block Billed Conference Time | -35.7 |
| Less 1/3 of Block Billed Conference Time | -141.3 |
| Less non-Block Billed Unrelated Time | -1.3 |
| Less 1/3 of Block Billed Unrelated Time | -5.6 |
| Less non-Block Billed Relator's Share | -0.9 |
| Less 1/3 Block Billed Relator's Share | -2.4 |
| Less All Time Spent Researching | -178.4 |
| Less non-Block Billed Expert Time | -4.6 |
| Less 1/3 Block Billed Expert Time | -13.1 |
| Less Duplicative Time | -5.2 |
| Less Hours Spent After Settlement | -100.1 |
| Total: | 358.0 |
| Reasonable Market Rate | $500/hour |
| Total: | $179,000.00 |
| Plus 89.2 hours of research at $250/hour | +$22,300.00 |
| **GRAND TOTAL:** | **$201,300.00** |

Furst's lodestar should similarly be calculated as follows:

| | |
|---|---|
| Hours requested: | 391.8 |
| Less non-Block Billed Conference Time | -12.0 |
| Less 1/3 of Block Billed Conference Time | -6.0 |
| Less non-Block Billed Unrelated Time | -20.1 |
| Less 1/3 of Block Billed Unrelated Time | -3.2 |
| Less non-Block Billed Relator's Share | -27.2 |
| Less 1/3 Block Billed Relator's Share | -2.5 |
| Less All Time Spent Researching | -45.0 |
| Less non-Block Billed Expert Time | -22.1 |
| Less 1/3 Block Billed Expert Time | -0.0 |
| Less Duplicative Time | -0.0 |
| Less Hours Spent After Settlement | -14.2 |
| Total: | 239.1 |
| Reasonable Market Rate | $350/hour |
| Total: | $83,685.00 |
| Plus 22.5 hours of research at $250/hour | +$5,625.00 |
| **GRAND TOTAL:** | **$89,310.00** |

Adding Litman and Furst's grand totals, the total lodestar amount equals $290,610.00.

## II.   NO ENHANCEMENT SHOULD BE APPLIED TO THE LODESTAR BECAUSE RELATOR HAS FAILED TO SATISFY THE CRITERIA SET FORTH BY THE SUPREME COURT TO ESTABLISH SUCH A MULTIPLIER

"The product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. The court has "the discretion to make certain adjustments to the lodestar," and the "party seeking adjustment has the burden of proving that an adjustment is necessary." *Rode*, 892 F.2d at 1183. In this case, Relator's Counsel satisfies none of the criteria for an upward modification of the lodestar.

### A. Relator's Counsel Cannot Satisfy the Requirements set by the Supreme Court for Upward Modification

Upward modification of the lodestar is exceedingly rare, and justified in only limited circumstances. Relator's Counsel seeks a lodestar enhancement due to the alleged novelty and complexity of the case, the skill of counsel, the results obtained, and the contingent nature of the fee. The burden of establishing an enhancement "must be borne by the fee applicant." *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 130 S.Ct. 1662, 1667 (2010).

Factors such as complexity or novelty of the case are inappropriate to consider when contemplating a lodestar enhancement. *Perdue*, 130 S.Ct. at 1673. "The novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel." *Id.* (internal quotations and citations omitted). Similarly, the skill of counsel should not be considered in a lodestar modification. *Id.* Like novelty and complexity issues, the skill of counsel is "normally reflected in the reasonable hourly rate." *Id.* (internal citations omitted). Any argument to the contrary presented by Relator's Counsel must be disregarded.

In fact, the Supreme Court has limited the availability of upward modifications of the lodestar to three situations: (1)

delay in payment, (2) in the "very rare circumstances where the attorney's work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence," *Student Pub. Interest Research Group of N.J.*, 842 F.2d at 1453, and (3) the necessity of attracting competent counsel, known as the contingency multiplier. *See, e.g., Rode*, 892 F.2d at 1184.

Delay in payment is not a factor here, as any delay is recovered by use of the current market rate, as opposed to the rate charged by counsel at the outset of the case. *Perdue*, 130 S.Ct. at 1675 (citing *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)). To the extent Relator argues that delay should nevertheless be considered as a factor due to the length of time it has taken to resolve this fee dispute, any such delay stems not from UMDNJ's actions, but rather from Relator's Counsel's obstinate refusal to accept a reasonable market rate for services undertaken. Further, any delay caused by the matter being moved from one court to another based on the recusal of a judge should not count against UMDNJ.

This case also does not present the rare case where the attorney's work is "so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence." *Student Pub. Interest Research Group of N.J.*, 842 F.2d at 1453. Relator's Counsel had little work to do in this

36

case to obtain recovery for their client, as is evidenced by the complete absence of any discovery or motion practice.  The DPA signed by UMDNJ in December 2005 for all intents and purposes established liability in this civil suit, and Relator's Counsel was able to ride the government's coattails to settlement of the underlying matter.  For that same reason, there was little doubt that the government would intervene.  Any argument by Relator's Counsel that their expertise in the FCA caused them to expend fewer hours on this case is clearly belied by the surplus of hours spent by both Litman and Furst conducting legal research.

Finally, Relator has presented no evidence that a contingent fee multiplier was required to attract competent counsel to this case.  Nowhere in Relator's Counsel's billing records is there any indication that Relator sought counsel in New Jersey.  The number of cases brought against UMDNJ, belies any notion that there is a dearth of competent counsel in New Jersey willing to accept a contingent fee in matters such as this.  There was very little risk to obtaining recovery in this case.  Therefore, no upward modifier to the lodestar is warranted.

### III. EXPENSES ARE NOT INCLUDED IN THE LODESTAR AND THE EXPENSES SUBMITTED BY FURST ARE INAPPROPRIATE AND NOT RECOVERABLE

The lodestar calculation consists only of the product of the reasonable market rate and the reasonable hours worked by the attorneys. *Blum*, 465 U.S. at 888. Expenses are not figured into this calculation. Instead, they are added to the total after the lodestar has been calculated and are not subject to lodestar enhancement or reduction.

In this case, Relator's Counsel claims expenses totaling $26,553.18. However, with their submissions, they have only included documentation for $18,636.26 in expenses, attached to Furst's time records. The $7,916.92 difference between the requested figure and the documentation submitted must be deducted from the ultimate award.

In addition, Furst's expenses include $17,616.00 in expenses paid to Steven Altman, a Washington, D.C. attorney retained by Relator's Counsel to assist with dealings with DOJ. Relator's Counsel's attempt to pass off Altman's fees as an "expense" is merely an attempt to circumvent the lodestar calculation and force UMDNJ to pay Altman the market rate charged by an attorney in Washington, D.C. Relator has presented no evidence of the rate charged by Mr. Altman or of the hours he worked on this case. Without this necessary information, the Court cannot conduct a lodestar calculation to

determine the appropriate fees, if any, to be paid to Mr. Altman.  As such, the $17,616.00 must be disregarded.

The total expenses owed to Relator's Counsel, then, is the remaining $1,020.26 from Furst's expenses request.  This amount should be added to the lodestar after any modifications.

## CONCLUSION

Relator seeks unreasonable fees and expenses from UMDNJ, a public entity, as a result of being the prevailing party in the underlying *qui tam* action.   The rates sought by Relator's Counsel must be reduced to the market rate in the District of New Jersey.   Likewise, the hours expended by Relator's Counsel on this case must be reduced to a reasonable number of hours, and billing entries that are vague, excessive or duplicative must be excised.   Finally, Relator's requested expenses must be reduced to only those expenses that are properly recoverable.

The lodestar in this case is $290,610.00.   When Relator's fees of $1,020.26 are added, the grand total, and the appropriate award for fees and costs in this case, is $291,630.26.

Respectfully submitted,

/s/ Walter F. Timpone
Walter F. Timpone
**McElroy, Deutsch, Mulvaney &**
**Carptenter, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Attorneys for Defendant, UMDNJ

Dated: March 1, 2011