**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                    :
UNITED STATES OF AMERICA *ex rel.*  :
STEVEN S. SIMRING, M.D.,            :
                                    :
        Plaintiffs,                 :        Civil Action No. 04-3530 (PGS)
                                    :
           v.                       :        **REPORT AND**
                                    :        **RECOMMENDATION**
UNIVERSITY PHYSICIAN ASSOCIATES,:
(UPA), *et al.*,                    :
                                    :
        Defendants.                 :
———————————————————:


**ARLEO, U.S.M.J.**

Before the Court is the application of plaintiff/relator Steven Simring, M.D. ("Dr.

Simring") for attorneys' fees, expenses and costs, (Dkt. Entry 91), incurred as a result of bringing

a civil *qui tam* action against the University of Medicine and Dentistry of New Jersey

("UMDNJ"), University Hospital ("UH"), New Jersey Medical School (collectively "UMDNJ"

or "defendants"), as well as individuals and other entities.  While UMDNJ does not dispute that

Dr. Simring, as a statutorily defined prevailing party, is entitled to reasonable attorneys' fees and

costs, UMDNJ disputes the reasonableness of the amount sought by Dr. Simring.  District Judge

Sheridan referred Dr. Simring's application to the undersigned for Report and Recommendation.

After considering all of the parties' submissions, and for the reasons set forth below, the

Court recommends that Dr. Simring's fee application be **GRANTED** but that the amount of legal

fees (including expenses and costs) originally requested by him be reduced, and that UMDNJ be

ordered to pay $ 364,581.65 in fees and $ 1,285.45 in expenses and costs, totaling $ 365,867.10.

## I.    BACKGROUND

On July 23, 2004, Dr. Simring, a professor and clinician at UMDNJ as well as a director of defendant University Physician Associates ("UPA"), filed the instant civil action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*[1]  This suit arises from Dr. Simring's allegations that he uncovered a fraudulent billing scheme wherein defendants UH and UPA, submitted duplicate bills to Medicaid for the same physician services.  According to Dr. Simring, defendants' submission of false and/or fraudulent claims for payment of such services under the relevant Medicaid reimbursement regulatory and statutory provisions violates the FCA.

The Court highlights the following procedural history as it relates to the instant fee application.  After filing his Complaint, Dr. Simring served a copy on the United States Attorneys Office ("USAO") as well as the United States Department of Justice ("DOJ").  The government, with the consent of Dr. Simring, filed an application to stay the action without prejudice, reserving the right to administratively reopen the case.  On September 1, 2004, the Court granted the stay.  On September 28, 2005, Dr. Simring moved to amend the Complaint, which the Court granted on October 7, 2005.

While the instant action was pending, the USAO launched a criminal investigation, arising from Dr. Simring's allegations and information discovered surrounding the fraudulent billing scheme.  The investigation resulted in UMDNJ having entered into a Deferred

---

[1] Dr. Simring originally filed the action under seal.  On September 1, 2004, the Court granted the request of the United States Attorney's Office for the District of New Jersey to partially lift the seal so that the USAO may disclose the allegations of the Complaint to UMDNJ.

Prosecution Agreement ("DPA") in December 2005.  Under the DPA, UMDNJ accepted responsibility for its unlawful conduct in exchange for the USAO's agreement to forego pursuing criminal prosecution against UMDNJ.

A review of Dr. Simring's counsel's respective billing records demonstrate that, after the filing of the Amended Complaint in October 2005, Dr. Simring and DOJ[2] spent the next three and a half years: (1) analyzing the threshold legal issue of whether UMDNJ, a state university hospital, was immune from suit under the Eleventh Amendment; (2) reviewing materials concerning retention of possible expert witnesses; (3) reviewing materials from the USAO criminal investigation; (4) analyzing whether they should move to file a second amended complaint to add new allegations and claims; (5) analyzing other issues related to legal strategy, including, but not limited to, retention of a consulting attorney and recusal of the USAO; (6) meeting with the New Jersey Attorney General's Office; and (7) engaging in settlement discussions with UMDNJ.  (*See* Harry Litman Decl., at Exh. A submitted *in camera*).  It is undisputed that no motion practice or discovery ensued.

In June 2009, the parties reached a settlement in the amount of $4.45 million.  Dr. Simring's share of the settlement was $800,000.  On August 18, 2009, DOJ filed a Notice that, pursuant to 31 U.S.C. § 3730, it elected to intervene in the action for settlement purposes only against UMDNJ ("Notice to Intervene").  Along with its Notice to Intervene, DOJ filed a Joint Notice of Voluntary Dismissal, together with Dr. Simring, concerning UMDNJ  ("Joint Notice of Voluntary Dismissal").

---

[2] After the USAO recused itself from the instant action, DOJ assumed litigation responsibility.

On August 26, 2009, Judge Martini issued an Order, memorializing the terms of DOJ's Notice to Intervene, Joint Notice of Voluntary Dismissal, and the terms of the parties' settlement agreement.  As it relates to the instant fee application, in its Order, Judge Martini also directed that it would retain jurisdiction to resolve any disputes concerning Dr. Simring's entitlement to reasonable attorneys' fees, expenses, and costs from UMDNJ, pursuant to 31 U.S.C. § 3730(d)(1).   Dr. Simring's instant fee application followed.

## II.     APPLICATION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

Dr. Simring seeks attorneys' fees, costs, and expenses in the total lodestar amount of $901,308.20, along with a twenty percent enhancement of the lodestar, based on what he describes as an exceptional result reached in an otherwise complex and risky case, for an amount totaling $1,081,570.  There is no dispute that Dr. Simring is entitled to receive reasonable attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d)(1).

UMDNJ contests the reasonableness of Dr. Simring's counsels' respective hourly rates. UMDNJ further challenges the amount of fees, costs and expenses requested, arguing that the time expended was excessive, redundant, unnecessary and/or unrelated to the legal claims against UMDNJ.  According to UMDNJ, based on its own recalculation, Dr. Simring's requested fees should be reduced so that the total lodestar amount for fees equals only $290,610.00.

Additionally, UMDNJ challenges Dr. Simring's assertion that he is entitled to any enhancement of the lodestar amount, arguing that Dr. Simring has failed to satisfy the requisite criteria entitling him to such a multiplier.  Finally, UMDNJ challenges undocumented expenses and attorneys' fees disguised as expenses.  As such, UMDNJ contends that the $26,553.18 award sought for expenses should be reduced to $1,020.26.

4

A.     **Legal Standard**

It is undisputed that the FCA allows a relator to recover "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" against a settling defendant.  31 U.S.C. §§ 3730(d)(1).  As detailed below, the cornerstone to determining the reasonableness of requested fees is examining the attorney's reasonable hourly rate and number of hours reasonably spent performing the work.  *See Blum v. Stenton*, 465 U.S. 886, 888 (1984); *see also Interfaith Cmty. Org. v. Honeywell Intern, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

To determine the amount of reasonable fees, the Court must calculate the "lodestar" amount by multiplying the attorney's reasonable hourly rate by the number of hours reasonably spent.  *Interfaith Cmty. Org.*, 426 F.3d at 703 n.5.  The moving party, here Dr. Simring, bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed.  *Washington v. Philadelphia County Court*, 89 F.3d 1031, 1035 (3d Cir. 1996).  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Indeed, the proper starting point for calculating the reasonable hourly rate is the "prevailing market rates in the relevant community."  *Interfaith Cmty. Org.*, 426 F.3d at 703.[3]

---

[3] The parties do not dispute the standard for calculating fees in that the "relevant community" in this matter is the State of New Jersey.  *See Interfaith Cmty Org.*, 426 F.3d at 705 (noting that the "forum rate rule permits an attorney to claim the prevailing rate for services rendered in the forum of the litigation).  However, in support of Dr. Simring's argument that his attorneys' respective hourly billing rates are reasonable, Dr. Simring notes that attorney Harry Litman has a national practice focused on FCA cases and charges a standard billing rate, which is not adjusted based on the "relevant community."  (Simring Mov. Bf at 9-10, 12).

Consistent with the Third Circuit's reliance on the "forum rate rule," this Court concludes that the State of New Jersey is the relevant community for purposes of calculating the reasonable hourly rate in this case.  Accordingly, as set forth herein, the Court will analyze the

The district court should "determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed." *Lanni v. New Jersey*, 259 F.3d 146, 150 (3d Cir. 2001). "[T]o determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 426 F.3d at 708 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir.2001)).

Attorneys may not rest on their own affidavits to support a party's claim of reasonable fees; rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community. *See Rode*, 892 F.2d at 1183; *see also P.G. v. Brick Twp. Bd. of Ed.*, 124 F. Supp. 2d 251, 261 (D.N.J. 2000). In determining a reasonable hourly rate, the Court must first examine "the attorney's usual billing rate, but this is not dispositive." *Loughner*, 260 F.3d at 180 (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). *See Blum*, 465 U.S. at 896 n.11 (noting that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with" the prevailing market rate).

Once a reasonable hourly rate is determined, the Court must next consider whether the time expended is reasonable. The court should exclude "hours that are not 'reasonably expended' by virtue of excessiveness, redundancy, or lack of necessity." *Mosaid Techs, Inc.*, 224 F.R.D. at 597 (quoting *Rode*, 892 F.2d at 1183). *See Public Int. Research Group of N.J.*, 51 F.3d

---

reasonableness of Mr. Litman's hourly rates and his co-counsel, Henry Furst's hourly rates, consistent with the prevailing rates in New Jersey for similar services performed by attorneys.

at 1188.

"If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request." *Interfaith Cmty. Org.*, 426 F.3d at 703 (quoting *Rode*, 892 F.2d at 1183). Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."[4] *Id.* at 703.

The court has significant discretion in determining the lodestar amount; however, once it is determined, the lodestar amount is presumably reasonable. *Lanni*, 259 F.3d at 149. *See Rode* 892 F.2d at 1183. After the lodestar amount has been calculated, either party may seek adjustment. *Id.* In its discretion, the court may increase or decrease the lodestar "'if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are unrelated to the litigation of the successful claims.'" *Apple Corps Ltd.,* 25 F. Supp.2d at 485 (quoting *Rode*, 892 F.2d at 1183).

### B.     Hourly Rates

Consistent with the Third Circuit's directive, this Court first examines the reasonableness of Dr. Simring's counsel's respective hourly rates. Here, the hourly rates of Dr. Simring's attorneys are as follows: Harry Litman - $825 and Henry Furst - $450.

In support of his request for attorneys' fees, Dr. Simring submits declarations from his own attorneys: (1) Mr. Litman, a principal of the Litman Law Firm, and of counsel at the

---

[4] "'Although [a] respondent's objections to the fee petition must be clear, a party challenging a fee petition need not always challenge specific time entries and have the court find that some specific time entry was unreasonable or unnecessary....'" *Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp.2d 480, 485 n.4 (D.N.J. 1998) (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Accordingly, the opposing party's objections are sufficient, for example, if it alleges the excessiveness of hours expended on particular categories of work. *Id.*

California based law firm Phillips & Cohen LLP ("Phillips & Cohen"); and (2) Mr. Furst, a principal of the law offices of Henry F. Furst, Esq.

Dr. Simring further submits declarations of attorneys Eric Havian of the Phillips & Cohen firm and Robert Cleary of the law firm of Proskauer in its New York Office in support of Mr. Litman's hourly rate. He also submits declarations from the following attorneys in support of Mr. Furst's hourly rate: (1) Raymond Brown of the New Jersey based firm Greenbaum, Rowe, Smith & Davis LLP, (2) Justin Walder of the New Jersey law firm Walder, Hayden & Brogan, P.A., (3) John Arseneault of the New Jersey law firm Arseneault, Whipple, Fassett & Azzarello, L.L.P., (4) Alan Zegas of the New Jersey law firm the Law Offices of Alan L. Zegas; and (5) Michael Himmel of the New Jersey based law firm of Lowenstein Sandler PC.[5]

---

[5] In support of his fee application, Dr. Simring also submits excerpts from a December 2010 survey released by the National Law Journal outlining billing rates of New Jersey law firms. (*See Billing Survey*, National Law Journal Vol. 33, No. 14, Dec. 6, 2010, annexed to Dr. Simring Mov. Bf at Exh. D). According to the survey, the highest hourly rates for partners in three reputable New Jersey law firms are $825 (McCarter & English), $790 (Gibbons), and $825 (Lowenstein Sandler). *Id.* However, the survey does not indicate comparable legal services. Specifically, there is no distinction between billing rates for litigation partners as compared with transactional partners. Indeed, in his supporting declaration, Mr. Himmel, a partner in Lowenstein Sandler's litigation department, states that the top hourly rate for litigation partners is $750, rather than $825. (Simring Reply Bf at Exh. I ¶ 7). As such, the Court declines to rely on this billing survey as a reliable source in determining the reasonableness of Dr. Simring's counsel's hourly rates as litigators.

Similarly, the Court declines to rely on Dr. Simring's proffered court approved hourly billing rates for bankruptcy litigators, who have appeared before the United States Bankruptcy Court for the District of New Jersey. (Simring Mov. Bf at Exhs. E-G). These sample court orders provide a snapshot of prevailing hourly rates for bankruptcy litigators, a specialized discipline, separate for other complex civil cases. As such, the billing rates for bankruptcy attorneys do not represent a range of prevailing hourly fee rates in complex civil actions, particularly False Claims Act cases, in New Jersey.

1.      *Mr. Litman's Hourly Rate*

Mr. Litman has been practicing law for more than twenty years.  (Harry Litman Dec.,

annexed to Pl. Mov. Bf at Exh. A ¶¶ 10-11).  When the instant petition was filed, Mr. Litman had

been engaged in a diverse national litigation practice, which included False Claims Act cases and

spanned a ten-year period.  (*Id.* at ¶ 15).  In their respective supporting declarations, Messrs.

Cleary and Havian highlight their respective years of experience, which individually span more

than twenty-five years.  Mr. Cleary has specialized in complex civil and criminal cases in both

private practice and government service.  (Robert Cleary Dec., attached as Exh. D to Simring

Reply Bf at ¶¶ 4-10).  Mr. Havian has specialized in False Claims Act cases as a former Assistant

United States Attorney and currently in private practice.  (Eric Havian Dec., attached as Exh. C

to Simring Mov. Bf at ¶¶ 5-7).

Both Messrs. Cleary and Havian also highlight the well regarded reputation, skill and

experience of Mr. Litman, with whom they are both personally acquainted.  (Cleary Dec. at ¶ 13;

Havian Dec. at ¶ 12).  They individually conclude that Mr. Litman's hourly rate of $825 is

reasonable and comparable to their respective billing rates as well as the rates charged by other

highly regarded litigators of complex cases, not limited to New Jersey.  (Cleary Dec. at ¶ 19;

Havian Dec. at ¶ 16).  Indeed, Mr. Cleary states that Mr. Litman's $825 hourly rate is

substantially lower than Mr. Cleary's customary rate.  (Cleary Dec. at ¶ 16).  Additionally,

according to Mr. Cleary, it is common for "top-tier" attorneys to charge one standard billing rate,

irrespective of which forum the case is being litigated.  (*Id.* at ¶¶ 17-18).

In challenging the reasonableness of Mr. Litman's hourly rates, UMDNJ submits the

Expert Report of attorney William McGuire ("McGuire Report"), an experienced litigator and

partner at the New Jersey based law firm Tompkins, McGuire, Wachenfeld & Barry, LLP.[6]

(McGuire Report attached to UMDNJ Opp Bf).  In arguing that Mr. Litman's hourly rate is

outside the prevailing rates charged in New Jersey, UMDNJ does not dispute the well regarded

credentials of Mr. Litman.  Instead, relying on Mr. McGuire's own examination of comparable

hourly rates, UMDNJ contends that the highest rates charged by litigation partners at New Jersey

law firms range from $435 to $725 per hour.  In his report, Mr. McGuire notes that he contacted

colleagues at large reputable firms to inquire as to the hourly rate charged by their litigation

partners with at least twenty years of experience.  (McGuire Report at 13).  Without disclosing

the names of the particular nine law firms, Mr. McGuire outlines the range of hourly rates

between $435 and $725 for firms much larger than those where Mr. Litman is affiliated.[7]  (*Id.*)

      Mr. McGuire opines that based on his compiled data, absent extraordinary exceptions, the

---

[6] Dr. Simring asks the Court to strike the McGuire Report, arguing that the methodology used therein is inherently unreliable under the Supreme Court's decision in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence.  Consistent with the Third Circuit's guidance, it is appropriate for UMDNJ, in challenging the reasonableness of Dr. Simring's counsels' fees, to have other attorneys within New Jersey, here Mr. McGuire, opine as to the reasonableness of an attorney's hourly rates based on his/her level of skill and experience as compared with other New Jersey complex case litigators.  *See Rode*, 892 F.2d at 1183.  *See also Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001).

However, Mr. McGuire's decision not to disclose the names of colleagues or the nine New Jersey law firms which he contacted to ascertain comparable billing rates does not compel the Court to strike Mr. McGuire's report based on its methodology.  Furthermore, as described herein, the McGuire Report provides ranges of comparable hourly rates rather than an exact hourly rate.  Accordingly, while the Court will consider the methodology used by Mr. McGuire and his conclusions based thereon, the Court will afford limited weight to the methodology in determining a reasonable hourly rate for Mr. Litman.

[7] The McGuire Report outlines the following data for hourly rates: Firm A: $435 (with limited outliers); Firm B: $450 to $525; Firm C: up to $550; Firm D: $525 to $625 (with limited outliers); Firm E: $510 to $630; Firm F: $500 to $650; Firm G: $500 to $650; Firm H: $415 to $670; and Firm I: $450 to $725.

highest rate for experienced, leading Northern New Jersey litigators in highly-regarded law firms is approximately $650 per hour.  (*Id.* at 13-14).  Mr. McGuire concludes that based on his experience and research, a reasonable hourly rate for a highly skilled and regarded New Jersey litigator with twenty-five years of experience is $500.  (*Id.* at 18).

The Court's analysis begins with its examination of Mr. Litman's usual billing rate of $825 per hour.  Mr. Litman along with Messrs. Havian and Mr. Cleary, who have submitted supporting certifications, contend that it is customary to charge one standard billing rate irrespective of the market, and that $825 is a reasonable standard rate.  This Court disagrees. First, as previously stated, consistent with the Third Circuit's guidance, the forum rate rule governs this fee petition, and New Jersey is the relevant community in which the prevailing market rates must be determined.  Dr. Simring submitted no affidavits or other competent evidence demonstrating that there were no New Jersey lawyers specializing in False Claims Act cases who were neither available nor willing to represent them.  *See Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1187-88, n.11 (3d Cir. 1995).

The Court notes that in support of Mr. Litman's hourly rate, Dr. Simring submits no declarations from New Jersey based litigators.  Nonetheless, in examining Mr. Litman's hourly rate, the Court will consider the five supporting declarations from New Jersey attorneys submitted in support of Mr. Furst's hourly rate.  (Pl. Mov. Bf at Exh. H; Pl. Reply Bf at Exhs. F-I).  As detailed below, the Court finds that these declarations provide an adequate basis to compare Mr. Litman's hourly rate to the rates prevailing in New Jersey for similar services by attorneys of reasonably comparable skill, experience and reputation.  *See Interfaith Cmty. Org.*, 426 F.3d at 703.

11

There is no dispute that Mr. Litman has been practicing law for more than twenty years. And yet, his requested hourly rate of $825 is significantly higher than the highest hourly rates of the five experienced attorneys or their law partners, who individually have been New Jersey litigators for more than thirty years.  Indeed, in their supporting declarations, they each provide their own customary hourly billing rate and/or the range of hourly rates at their individual firms without any qualifiers.  Mr. Brown states that his own billing rate is $500 per hour.  (Pl. Mov. Bf at Exh. H ¶ 13).  Mr. Walder notes that his law firm's current hourly rates for associates and partners range from $300 to $675.  (Pl. Reply Bf at Exh. F ¶ 6).  Mr. Arseneault submits that his firm's currently hourly rates for associates and partners range from $175 to $650.  (*Id.* at Exh. G ¶ 7).  Mr. Zegas states that his firm's currently hourly rates range from $295 to $635.  (*Id.* at H ¶ 12).  Mr. Himmel submits that the current hourly rates for associates and partners in the Litigation Department range from $235 to $750.  (*Id.* at Exh. I ¶ 7).

Using the evidence submitted by Messrs. Brown, Walder, Arseneault, Zegas and Himmel, the Court will determine the average mean for partners billing at the highest rate.  The Court calculates that the average mean per hour for partners (averaging $500, $675, $650, $635, and $750)[8] is $642.  The Court finds this method of determining the current prevailing market rate for litigators of complex civil actions, such as False Claims Act cases, comparable to the one Mr. Litman has requested in this case, is reasonable.  Mr. Litman's hourly fee rate of $825 is significantly higher than average mean of $642.

---

[8]  The Court calculated the average of the following hourly rates: (1) $500 for Mr. Brown; (2) Mr. Walder's firm's highest hourly rate of $675 for partners; (3) Mr. Arseneault's firm's highest hourly rate of $650 for partners; (4) Mr. Zegas's firm's highest hourly rate of $635 for partners; and (5) Mr. Himmel's firm's highest hourly rate of $750 for partners.  (Pl. Mov. Bf at Exh. H ¶ 13; Pl. Reply Bf at Exh. F ¶ 6, Exh. G ¶ 7, H ¶ 12, Exh. I ¶ 7).

Even accepting the data of comparable hourly rates contained in the McGuire Report, the average of the highest hourly rate for litigation partners is $606.  Specifically, as represented by Mr. McGuire, the highest hourly rates charged by litigation partners with at least 20 years of experience at Firms A through I is as follows: $435, $525, $550, $625, $630, $650, $650, $670, and $725, respectively.  (McGuire Report at 13).  In short, Mr. Litman's hourly rate does not fall within the norm of attorneys in New Jersey.

Accordingly, using either the data contained in the supporting New Jersey attorney declarations or the McGuire Report, the Court has determined that the two average means for prevailing hourly rates for attorneys in New Jersey with comparable skills, reputation and experience is $642 and $606, respectively.  Thus, this Court recommends that a downward departure of Mr. Litman's hourly rate, from $825 to $625 (an average of the two reasonable average means of hourly rates), is warranted.

As a related issue, defendants contend that both attorneys' hourly rates for time spent performing legal research should be reduced to $250, an appropriate associate level rate.  In response, Dr. Simring argues that courts rarely reduce requested rates for work performed by solo practitioners.  This Court disagrees.  Courts within this district have found that tasks which can be delegated to associates and/or paralegals should not be performed by partners.  *See Apple Corps.*, 25 F. Supp.2d at 491.  To the extent it is not always feasible to delegate tasks in smaller firms or solo practices, such scenarios do not justify billing at partner level rates.  Thus, with these principles in mind and based on the Court's review of the billing records, the Court finds that legal research entries warrant a reduction in attorneys Litman's and Furst's rates, and thus recommends a reduction to $250 per hour.

13

2.    *Mr. Furst's Hourly Rate*

The Court notes that Mr. Furst has been practicing civil and criminal law for more than thirty years in New Jersey.  (Simring Mov. Bf at Exh. B ¶¶ 11-12).  As noted above, in support of Mr. Furst's hourly rate, Dr. Simring submits declarations from Mr. Brown, Mr. Walder, Mr. Arseneault, Mr. Zegas and Mr. Himmel, who each state that they have been personally acquainted with Mr. Furst.  (Simring Mov. Bf at Exh. H; Pl. Reply Bf at Exhs. F-I).  Each of these five attorneys state that based on their years of experience in the legal profession, particularly in practicing complex civil and/or criminal litigation, as well as the stellar reputation of Mr. Furst, these attorneys believe that Mr. Furst's hourly rate of $450 is well within the market rate and thus sufficiently reasonable.  (Pl. Mov. Bf at Exh. H; Pl. Reply Bf at Exhs. F-I).

As previously discussed, these attorneys each with more than thirty years of experience as New Jersey litigators provide their own customary hourly billing rate and/or the range of hourly rates at their individual firms without any qualifiers.  In challenging the reasonableness of Mr. Furst's hourly rate, UMDNJ again relies on the McGuire Report.  Based on his review of Mr. Furst's submitted qualifications and experience, Mr. McGuire notes that Mr. Furst primarily practices criminal defense litigation.  Mr. McGuire also states that Mr. Furst provides little support for his $450 hourly rate, beyond the opinion of Mr. Brown in his declaration.  Mr. McGuire contends that Mr. Furst's experience and reputation does not rise to the extraordinary caliber of other notable criminal defense attorneys, including, but not limited to, Messrs. Arseneault, Zegas, Himmel, Brown and Walder.  (McGuire Report at 19).  Finally, Mr. McGuire claims that because he concludes that $500 is a reasonable hourly rate for Mr. Litman, based on Mr. Litman's experience and high credentials, Mr. Furst's $450 hourly rate cannot be justified.

As such, Mr. McGuire opines that $350 is an appropriate hourly rate for Mr. Furst's experience

and the limited amount of work he performed on this case.  (*Id.* at 16).

Consistent with the Third Circuit's guidance, the Court is satisfied that Dr. Simring has

proffered sufficient evidence indicating that his requested $450 hourly rate for Mr. Furst is

reasonable.  Dr. Simring has provided his billing rate, level of experience as a civil litigator and

five declarations from experienced complex litigation attorneys in New Jersey, who have

demonstrated that Mr. Furst's hourly rate of $450 is significantly lower than the highest hourly

rates for New Jersey attorneys with comparable experience, skill and reputation as Mr. Furst.

### C.    Time Expended

Dr. Simring seeks $874,755 in attorneys' fees ($698,455 for Mr. Litman's services and

$176,310 for Mr. Furst's services) and $26,553.10 in expenses/costs ($7,916.92 for Mr. Litman

and $18,636.26 for Mr. Furst).  (First Litman Dec. at ¶ 9; Furst Dec. at ¶ 8).  Thus, Dr. Simring

seeks to recover attorneys' fees and costs totaling $901,308.20, excluding his request for a twenty

percent enhancement of the lodestar, which increases the total amount sought to $1,081,570.

The Court has carefully considered the hours spent by Messrs. Litman and Furst in

support of Dr. Simring's application for reasonable attorneys' fees and costs.  For the reasons

explained below, the Court will **GRANT** the fee application but reduce the amount of expended

hours to be reimbursed.  The precise amount of reasonable fees and costs to be awarded for time

expended is set forth in Section IV of this opinion.[9]  As is evident from the Court's analysis

---

[9] While the Court would have preferred to perform a time entry-by-entry analysis, given
the more than seventy pages of billing records collectively for Messrs. Litman and Furst, the
manner in which some time entries recorded multiple tasks, and the generality of some of the
time entries, such a precise analysis was virtually impossible.  Instead, the Court reviewed all
time entries, and then considered whether the tasks were necessary, and if so, the amount of time

below, the precise award excludes time spent on unnecessary tasks, excessiveness, and/or vague

described work performed.

As noted above, under *Rode*, if the fees are excessive, redundant, or otherwise

unnecessary, they must be reduced accordingly.  *Rode*, 892 F.2d at 1183.  In short, the over

$900,000.00 fee application, excluding the lodestar enhancement, is excessive without even

taking into consideration the Court's decision to reduce Mr. Litman's hourly rate by $200 (i.e.,

from $825 to $625) and both attorneys' hourly rate for legal research to $250.  Accordingly, as

set forth in Section IV of this opinion, the Court shall reduce the attorneys' fees which Dr.

Simring is entitled to recover from UMDNJ to $ 364,581.65.  The Court shall also reduce his

costs to be reimbursed, and order UMDNJ to pay $ 1,285.45.

As Judge Orlofsky noted in Microsoft Corporation, "[e]xcessive legal fees, if not checked

by the exercise of billing judgment or, in this case, this Court's inherent powers, will be borne

unjustly by someone, be that a losing adversary, a client, or a client's unsuspecting customers or

shareholders.  The duty imposed by the Rules of Professional Conduct to represent a client

zealously does not create a license to write a blank check for excessive legal fees." *Microsoft*

*Corp. v. United Computer Resources of New Jersey, Inc.*, 216 F. Supp.2d 383, 386 (D.N.J.

2002).

In determining whether the hours expended by Dr. Simring's attorneys are reasonable,

this Court considers UMDNJ's contention that many tasks were unreasonably excessive,

duplicative and unnecessary, especially given the minimal amount of legal work performed

---

needed to perform them.  The Court then conservatively arrived at a logical determination of the
number of hours reasonably needed for the work.  See Section IV of this Opinion. *See also*
*Maldonado v. Houstoun*, 256 F.3d 181, 186-188 (3d Cir. 2001)

related to actively litigating the case and the parties' settlement of the claims against UMDNJ before any discovery and motion practice was undertaken. The Court is also mindful that the fee application does not see reimbursement for <u>any</u> motion practice or discovery. The case was stayed immediately after the Complaint was filed. After the filing of an Amended Complaint, the case settled.

UMDNJ takes issue with the following work performed: (1) vaguely described telephone calls and conferences; (2) a combined one-hundred seventy-nine vague and/or block billing entries of Messrs. Litman and Furst, making it impossible to determine the reasonableness of the time expended; (3) use of more experienced attorneys to perform nonlegal or simple legal tasks, such as legal research; (4) an excessive amount of legal research generally, which, with the exception of the Eleventh Amendment bar to suit research, was irrelevant to the case; (5) multiple attorneys having researched the same legal issues; (6) time spent on matters unrelated to Dr. Simring's claims against UMDNJ, such as time spent litigating claims against co-defendants and reviewing newspaper articles about events, such as burglaries at one of UMDNJ's offices; (7) time spent negotiating plaintiff's share of the settlement with the United States; (8) time expended searching for potential expert witnesses, who eventually were not retained; (9) duplicative time entries; (10) post-settlement work including time spent litigating this fee dispute; and (11) insufficiently documented costs and work performed by attorney Steven Altman, disguised as costs.

As detailed below, while this Court recognizes that this case involved complex legal issues that focused on Dr. Simring's right to sue UMDNJ in the first instance and frequent contact with DOJ that spanned nearly five years until the case settled in the summer of 2009, the

Court finds that several of defendants' challenges are well-founded. Indeed, the Court finds that some of the work performed by both attorneys was duplicative as some of the tasks at hand did not justify the efforts of two seasoned attorneys with more forty years of complex litigation experience between them. Other tasks were either unnecessarily or excessively performed by attorneys Litman and Furst. Although undisputably Dr. Simring is statutorily entitled to an award of attorney's fees and costs as a prevailing party, the controlling standard is that the Court award *reasonable* fees and costs.

       1.    *Duplication of Efforts*

In support of his fee petition, Dr. Simring acknowledges there is some overlap of work performed. Yet, he contends that, given the complex nature of the litigation, any such overlap between attorneys Litman and Furst was collaboratively performed when appropriate. Citing to Mr. Litman's extensive *qui tam* litigation experience and prior employment with DOJ, Dr. Simring asserts that Mr. Litman was retained primarily to respond to DOJ's concern that Supreme Court case law might bar any recovery to plaintiff, and could possibly prevent the government itself from civilly prosecuting UMDNJ under the False Claims Act. (Simring Mov. Bf at 10). Specifically, the issue was whether the suit was barred by the Eleventh Amendment under the principles of *Vt. Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765 (2000). According to plaintiff, Mr. Litman's "behind the scenes" advocacy and analysis ultimately convinced DOJ that *Stevens* did not bar recovery to plaintiff or the government.

Undoubtably, Dr. Simring is entitled to retain more than one attorney to represent his interests in the instant action. Furthermore, the Court recognizes that a certain amount of communication between counsel and/or their client was necessary during the course of

18

investigating and litigating this case.  However, at times, two lawyers were performing the same

legal research as well as preparing and editing the two pleadings filed here.  For example, while

Mr. Litman was retained primarily to address the *Stevens* Eleventh Amendment issue, it is

curious that both he and Mr. Furst performed research on this issue.  The following time entries

are only a snapshot of the total hours expended on the *Stevens* research throughout the course of

this litigation:

> Mr. Furst's billing entry of July 25, 2005:  "additional research re: Stevens
>
> issue...."
>
> Mr. Furst's billing entry of November 4, 2005: "research into whether UMDNJ is
>
> a state entity for Stevens purpose."
>
> Mr. Furst's billing entry of November 15, 2005: " continue research on whether
>
> UMDNJ is a 'person.'"

(Furst Billing Records)

> Mr. Litman's billing entry of August 2, 2005: "legal research on Stevens and
>
> related issues...."
>
> Mr. Litman's billing entry of August 4, 2005: "legal research on Stevens...."
>
> Mr. Litman's billing entry of November 16, 2005: "... legal research on Stevens
>
> and 11th Amendment and UMDNJ...."

(Litman Billing Records).

Fees should be reduced when the efforts of attorneys are duplicative in that "the attorneys

are *unreasonably* doing the *same* work."  *Rode*, 892 F.2d at 1188 (emphasis in original).  *See*

*Lanni*, 259 F.3d at 151 ("Given [counsel's] professed expertise in this area, it would not have

been unreasonable to expect her to conduct the trial alone or with the help of an associate" as opposed to another partner).  Given Mr. Litman's apparent level of skill and experience, the Court finds that Mr. Furst's time spent researching the same topics as Mr. Litman to be unreasonable and excessive.

Indeed, by way of another example, both attorneys performed legal research relating to *"Barajas"* on multiple dates, which include but are not limited to the following:  Mr. Furst performed legal research on May 24, 2006 and December 3, 2008 while Mr. Litman performed similar research on February 13, 2006, March 27, 2006, January 17, 2007, June 26, 2008, and November 25, 2008.  (Furst and Litman Billing Records).

While the Court recognizes counsel's need to research relevant legal issues in the case, attorneys Furst and Litman's efforts to conduct the same research was duplicative.  *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) ("[t]rial courts should not accept passively the submission of counsel to support the lodestar amount. . . . For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.").  Therefore, the Court recommends that for such duplication of efforts in legal research those hours for Mr. Furst be reduced by half.  *See, e.g., Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939, 944 (3d Cir. 1995) (granting adversary's request for a fifty-percent reduction in the principal attorney's number of hours spent in preparation of the proposed findings of fact based on duplication of efforts); *Microsoft Corp.*, 216 F. Supp.2d at 390 (reducing national and local counsel's fees by half due to duplicative work in connection with contempt proceeding); *Garden State Auto Park Pontiac GMC Truck, Inc. v. Electronic Data Sys. Corp.*, 31 F. Supp.2d 378, 387 (D.N.J. 1998) (reducing fees of lead and local counsel by half

20

because of duplication of work during case).

        2.    *Excessiveness*

Having carefully reviewed counsel's billing entries, the Court makes the following observations.

        a.    <u>Legal Research</u>

With respect to legal research performed, UMDNJ highlights that Mr. Litman made billing entries for "legal research" on seventy-four separate occasions prior to the case settling in June 2009, totaling 178.4 hours.  According to UMDNJ, the number of time entries is astonishing given the lack of motion practice in the case and Mr. Litman's extensive expertise in the field of False Claims Act cases.  Thus, UMDNJ requests that both attorney's time spent on legal research be reduced by half.

This Court agrees.  Despite the Eleventh Amendment sovereign immunity issue raised in this case, given Mr. Litman's undisputed expertise in the area of False Claims Act cases, it is unreasonable for him to request reimbursement for nearly 200 hours of time spent on legal research on topics related to the elements for proving a FCA claim, statute of limitations, information sharing agreements with DOJ, and the statutory scheme and legislative history concerning health care fraud claims, among other areas.  Indeed, his high billing rate is justified, in part, by his expertise in this area.  (*See* Litman Billing Records at 9/7/05, 9/1/05, 12/20/05, 6/14/06, 1/17/07).  Thus, the Court recommends that Mr. Litman's hours spent on performing legal research be reduced by half.

        b.    <u>Drafting and Editing Pleadings and Legal Memoranda</u>

Similarly, given Mr. Litman's apparent level of skill and expertise with False Claims Act

litigation, the Court finds that his more than forty hours spent drafting, conferring with co-counsel and consultants, and editing the Amended Complaint is both unreasonable and excessive.  Likewise, by way of example, Mr. Litman spent more than thirteen hours preparing, drafting and revising a letter brief to the USAO.  (*See* 11/15/06, 11/18/06, 11/19/06, 11/20/06, 11/22/06, 11/26/06 Litman Billing Records).  Accordingly, this Court recommends that Mr. Litman's hours excessively performing such tasks be reduced by half.

c.     <u>Associate, Paralegal and/or Administrative Work</u>

Defendants object to many of the billing entries of both Messrs. Furst and Litman on the basis that the tasks could have been performed by a more junior attorney, paraprofessional, or administrative assistant.  In charging the highest billable rate for all work performed, the Third Circuit has observed:

> A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable.  Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries.  As such, to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable.  Having prevailed in the litigation is not cause to overwhelm the losing party with unreasonable fees and costs.  'Hours that would not generally be billed to one's own client are not properly billed to an adversary.'  *Public Interest Group*, 51 F.3d at 1188.

*Loughner*, 260 F.3d at 180.

Here, the Court finds numerous instances in which Mr. Furst and Mr. Litman billed for tasks, that could have been performed by a junior associate, paralegal, or secretary.  For example, the Court highlights the following entries:

(1) on July 23, 2004, Mr. Furst "file[d] complaint at Clerk's office in Newark;

22

travel and return."

(2) on July 23, 2004, Mr. Furst, "prepare[d] summons and transmittal letter to

clerk including notation that the complaint is filed under seal."

(3) on August 4, 2004, Mr. Furst, "review[ed] return of green card on US

Attorney; file[d] proof of service with Clerk's office."

(Furst Billing Records).

As for Mr. Litman, on multiple occasions, he billed for performing a "case file review and organization." These ministerial tasks do not justify reimbursement at the $450 per hour partner rate. (*See* 9/14/06, 12/29/06, 1/24/07, 1/9/08 Litman Billing Records).

On balance, the Court finds that some reduction for simple legal and/or administrative tasks that could have been performed by an associate, paraprofessional, or secretary is warranted. In these instances, given the small firm or solo practices of Dr. Simring's counsel, they should have discounted the time. As such, the Court recommends that the hourly rate for such tasks be reduced to $ 95.

3.    *Vague Time Entries*

Defendants further argue that many of Dr. Simring's counsel's entries are vaguely described, and his counsel improperly use "block billing," making it impossible to determine the reasonableness of the time expended. The Court rejects defendants' general contention that block billing is not permitted. Indeed, an attorney's use of block billing is common practice and is entirely appropriate so long as a reviewing court can determine "whether the hours reasonably correlate to all of the activities performed" within each block entry. *United States of America ex rel. John Doe v. Pennsylvania Blue Shield*, 54 F. Supp.2d 410, 415-16 (M.D. Pa. 1999). Yet,

"when there is confusion due to block billing, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion by task billing." *U.S. v. NCH Corp.*, Nos. 98-5268, 05-881, 2010 WL 3703756, at * 5 (D.N.J. Sept. 10, 2010).

Additionally, "where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A "fee application need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted. . . ." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (internal quotations omitted).  Nonetheless, where billing entries "'are so vaguely generic that the Court cannot determine with certainty whether the activities they purport to describe were . . . reasonable,' the petitioner has not met his burden." *United States ex rel. Thompson v. Walgreen Co.*, 621 F. Supp.2d 710, 727-28 (D. Minn. 2009) (quoting *Cobell v. Norton*, 407 F. Supp.2d 140, 158 (D.C.C. 2005)).

Here, the Court notes that, in support of his fee petition, Dr. Simring has not provided any explanation for the nature of work performed in several vaguely described entries.  For example, on numerous occasions, both Messrs. Furst and Litman have time entries indicating that they conferred with or had conference calls with one another or other individuals, such as Chris Larson, the DOJ attorney, but provide no context for the communication or whether it related to the claims against UMDNJ as opposed to the other defendants in the action.  (*See, e.g.*, 3/20/06, 4/17/06, 4/19/06, 4/2/08, 4/4/08, 4/14/08, 5/1/08 Litman Billing Records and 8/3/05, 8/24/05, 8/28/05, 9/1/05, 9/7/05 [sic], 9/20/05,11/14/05 Furst Billing Records).  Accordingly, based upon its review of the time entries for both attorneys Furst and Litman, the Court finds such entries are vaguely described and recommends that any such vaguely described time be deducted from the

final fee award.

        4.     *Unnecessary Work Performed*

        a.    <u>Work Related to Other Named Defendants</u>

Defendants also contend that Dr. Simring's counsel improperly charged for time spent on tasks unrelated to his specific claims and allegations against UMDNJ, which includes: (1) investigating and litigating claims against the co-defendants; (2) reviewing newspaper articles related to burglaries at UMDNJ; (3) contacts with the state attorney general; and (4) negotiating Dr. Simring's share of the settlement with DOJ.  This Court agrees.

Although his counsels' use of block billing is permissible, Dr. Simring' attorneys have made no effort to differentiate the time spent litigating his claims against UMDNJ, which is compensable, and the time spent pursing his claims against the other defendants, which is not compensable.  Indeed, it is undisputed that the other defendant entities and individual defendants were separately represented and ultimately negotiated and reached settlements with Dr. Simring independent of the one reached with UMDNJ.  For those entries, which clearly describe time spent litigating claims only against the other named defendants, the Court recommends that such time be disallowed.  For those block billing entries which collectively detail tasks performed concerning UMDNJ and the other named defendants, making it impossible to determine how much of the particular charge is apportioned to the UMDNJ related work, the Court recommends that the hours for both attorneys Furst and Litman be reduced relative to the number of compensable tasks as compared with the number of noncompensable tasks.

        b.    <u>Review of Newspaper Articles</u>

With respect to any review and discussion of newspaper articles detailing breaking and

entering at UMDNJ's offices, Dr. Simring's counsel offer no explanation about the relevance of this work to his claims against UMDNJ or how it advanced the litigation.  This Court would be hard pressed to reimburse them for such tasks at the rate of $825 and $425 per hour.  Thus, the Court recommends that any of Messrs. Furst's and Litman's time spent on such tasks be deducted from the final fee award.

      c.      <u>Communications with State Attorney General</u>

The Court also notes that Dr. Simring improperly seeks reimbursement for time spent communicating and meeting with state deputy attorney generals.  Indeed, as the billing records and official court docket reflect, the Attorney General of New Jersey never intervened or otherwise formally joined in this action.  Accordingly, such time charged by Dr. Simring's counsel is not compensable, and thus the Court recommends that no fee award include time spent by Dr. Simring's counsel performing such tasks.  *See Thompson*, 621 F. Supp.2d at 718.

      d.      <u>Recovery for Relator's Share from the Government</u>

Defendants also object to counsels' billing for time spent negotiating and recovering Dr. Simring's share from the government.  In his motion papers, Dr. Simring does not respond to defendants' challenge.  Nonetheless, the Court makes the following observations.   The plain text of the qui tam attorney's fees provision, 31 U.S.C. § 3730(d), does not squarely address this issue.  *See Thompson*, 621 F. Supp.2d at 726-727.  Significantly, the weight of authority, having addressed this issue, have interpreted the attorney's fees provision as excluding from the lodestar any time incurred from relator share litigation.  *Id.* at 726-727 (agreeing with the majority of courts which have disallowed compensation for attorneys' fees and costs incurred concerning relator share litigation); *Miller v. Holzmann*, 575 F. Supp.2d 2, 26-27 (D.D.C. 2008) (internal

citation omitted) ("the time counsel spent on negotiation of the Relator's share is not appropriately billed to the defendants in this case."); *Pennsylvania Blue Shield*, 54 F. Supp.2d 410, 415-16 (M.D. Pa. 1999) (noting that [i]t is collateral litigation against the government, such as a dispute over the appropriate percentage of the proceeds to be awarded to a relator . . . which is excludable [from the lodestar]."). In *Thompson*, the Court reasoned that because the defendant was not involved in the collateral litigation related to negotiating and recovering the relator's share, the defendant should not be compelled to bear that expense.

This Court finds the reasoning of the court in *Thompson* persuasive. Thus, the Court finds that Dr. Simring's counsel should not be compensated for their fees and costs incurred in connection with negotiating Dr. Simring's share. Accordingly, the Court recommends that any such time expended by attorneys Furst and Litman be deducted from the final fee award.

e.    Potential Expert Witnesses And Consultants

While defendants do not dispute that Dr. Simring would be entitled to reimbursement for incurring non-testifying expert witness fees, defendants assert that attorneys Furst and Litman improperly billed for time spent searching for and communicating with expert witnesses who were never ultimately retained. Indeed, it bears repeating that absolutely no discovery took place in this case. Again, Dr. Simring does not directly respond to this objection. With the exception of Steven Altman, Esq., the Court finds that Dr. Simring's counsel's billing records are limited to time charged for searching and/or interviewing potential expert witnesses and consultants who were never eventually retained. As such, the Court finds that such tasks neither advanced the litigation nor was in any way relevant to Dr. Simring's claims against UMDNJ. Thus, the Court concludes that any such time is not compensable. Thus, the Court recommends that Messrs.

27

Furst's and Litman's hours be reduced accordingly.

As to the work performed by Dr. Simring's consultant, attorney Altman, Dr. Simring states that he was retained as a consultant to provide valuable insight into "the processing of this case" by the DOJ given his former supervisory role over the DOJ attorney assigned to handle the instant action.  (Simring Reply Bf at 12-13).  In opposition, UMDNJ suggests that $17,616 of Furst's total $18,636.26 in expenses, which account for sums paid to attorney Altman, should be rejected because they are counsel fees rather than costs of litigation.  Although Dr. Simring asserts that attorney Altman was retained as a legal consultant rather than as co-counsel for Dr. Simring, this Court's review of the time entries does not definitively reveal whether Mr. Altman was performing legal work as an attorney for Dr. Simring or merely serving as a legal consultant.

The distinction is of no moment because the Court finds that Mr. Altman's time is not otherwise compensable.  If he was retained as an attorney to serve as co-counsel, he has provided no supporting affidavit or billing entries.  If he was retained as a legal consultant, the Court does not find his services necessary, given the proffer provided by Dr. Simring.  With Mr. Litman's prior experience as a United States Attorney and his expertise in litigating False Claims Act, it appears that Mr. Altman's services were superfluous at best, and at minimum unnecessary.

"In certain cases, the attendance of additional counsel representing the same interests as the attorney actually participating in a hearing 'is wasteful and should not be included in a request for counsel fees from an adversary.'"  *Apple Corps Limited*, 25 F. Supp.2d at 489 (quoting *Halderman*, 49 F.3d at 943 (internal citation omitted).  Although a private client may wish to pay for multiple attorneys to merely attend hearings on that client's behalf, "this practice is not necessarily reasonable when the extra expense will be borne by the other party to the

28

proceedings." *Id.* (citing *Halderman*, 49 F.3d at 943).  Accordingly, the Court recommends that any time spent in connection with retaining Mr. Altman and any work performed by him not be compensated.

> f.      Contemplated Second Amended Complaint

A review of the billing records reflects that in the Spring and Summer of 2006 counsel reviewed materials, performed legal research, conferred with one another, and drafted a Second Amended Complaint.  (*See* Furst and Litman Billing Records).  However, it is undisputed that plaintiffs never moved to amend, and thus, any such work performed is not relevant to this action or in any way impacted the ultimate settlement reached between the parties.  It bears noting that the District Court had stayed the action.  As such, the Court finds that any such time is not compensable and thus recommends that time expended on such tasks not be reimbursed.

> g.      Retention of Phillips & Cohen Law Firm

The billing records of both attorneys also reflect time spent in August through October 2005 retaining Mr. Litman's firm, including but not limited to, running a potential conflicts check, and the possibility of retaining other counsel.  (*See* Furst and Litman Billing Records). Accordingly, the Court finds that any such time is not compensable and thus recommends that time expended on such tasks not be reimbursed.

> h.      Work Performed on Instant Fee Application

Finally, Defendants contend that Dr. Simring improperly seeks reimbursement for his counsels' time spent litigating this fee dispute.  Dr. Simring responds that it is permissible for him to seek reimbursement of counsels' fees incurred following the June 2009 settlement, and specifically time spent on the fee petition.

29

Although the Court finds that Dr. Simring properly seeks reimbursement for his counsels' time spent preparing the instant fee application, the number of hours expended by attorneys Litman and Furst on the fee application, let alone the time spent by their attorneys from the law firm of Stone & Magnanini, who were retained solely to litigate this fee dispute, is excessive. The number of hours spent by multiple attorneys in preparing, reviewing and revising the fee application and four legal briefs submitted by Dr. Simring is excessive. Thus, the Court recommends that Mr. Litman's hours as captured in his billing records be reduced, and that he be awarded $ 10,000 for his time spent on the instant petition. *See, e.g., Aerogroup Int'l v. Ozburn-Hessey Logistics, LLC*, Civ. No. 08-4217 (SDW), 2011 WL 1599618, at *3 (D.N.J. Apr. 27, 2011) (reducing magistrate judge's fee award of $246,211.61 to $10,000). As for Mr. Furst, who did not submit any time records post-settlement, the Court recommends that he be reimbursed $4,500 for his time spent on the instant petition, as he spent far fewer hours than Mr. Litman litigating this case. *See Maldonado*, 256 F.3d at 187 (allowing reimbursement for fee petition, but reducing the number of hours allowed due to excessiveness). The Court's recommendation of reimbursing counsel for only $14,500 incurred by this fee petition includes the time expended by the law firm of Stone & Magnanini.

### D. Enhancement of the Lodestar

Finally, Dr. Simring seeks a twenty percent enhancement of the lodestar. Thus, as Dr. Simring incurred attorney's fees, costs and expenses in the amount of $901,308.20, he seeks a total amount of $1,081,570, which includes the twenty percent enhancement. In limited circumstances, a court, in its discretion, may apply an enhancement to the prevailing party's lodestar based on the quality of legal representation; the need to attract competent counsel,

30

known as the contingency multiplier; and due to a delay in payment by the adverse party.  *See Perdue v. Kenny A. Ex rel. Winn*, __ U.S. __, 130 S.Ct. 1662, 1667 (2010); *see also Student Public Int. Research Group of New Jersey, Inc. v. AT&T Bell Laboratories*, 842 F.2d 1436, 1451-1454 (3d Cir. 1988).

Given the totality of circumstances in this case, the Court finds that no such enhancement is warranted.  First, it is impossible for this Court to evaluate the quality of work, since the case was stayed and no motion practice, oral argument or trial took place.  Almost all of the work took place "behind the scenes," <u>i.e.</u>, research in attorneys offices or in meetings  with DOJ lawyers.  Although the Court has no reason to doubt that the work performed by attorneys on both sides was professional and competent, "upward adjustments based on quality of representation are rarely justified because of the strong presumption that the lodestar is a reasonable fee." *Student Public Int. Research Group of New Jersey*, 842 F.2d at 1453.  Indeed, the Court carefully reviewed plaintiff's counsel's billing records to arrive at a reasonable lodestar amount.

Second, the Court underwent a painstaking analysis to determine and apply the prevailing market hourly rate.  In so doing, the Court has assured that the fee awarded is sufficient to attract competent counsel.  Thus, a contingency multiplier is not necessary. *See id.* at 1452.  In any event, Dr. Simring has presented no evidence that he was unsuccessful in attempting to locate competent available counsel within New Jersey.

Finally, although there has undoubtedly been a delay in payment, the Court is not convinced that the fault lies solely at the feet of defendants.  Indeed, both Dr. Simring and defendants have vigorously litigated this fee petition, and attempted to settle the disputes over Dr. Simring's counsels' hourly rate and the total number of hours expended by his counsel.

Thus, it is clear that any delay of payment cannot be blamed solely on the actions or inactions of defendants.  As such, in its discretion, this Court declines to award Dr. Simring any enhancement of the lodestar.

      **E.**      **Expenses and Costs**

UMDNJ argues that any award for total expenses and costs should exclude: (1) Litman's $7,916.92 in expenses, which was not properly supported by documentation;  and (2) $17,616.00 improperly designated by Furst as expenses rather than legal fees paid to Steven Altman, an attorney retained to assist with the case.  As such, UMDNJ submits that the total amount of expenses and costs should be reduced to $1,020.26.

With respect to the $ 7,916.92 sought for Mr. Litman's expenses and costs, the Court notes that as part of Dr. Simring's reply brief, he provided an itemized list of those expenses and costs, which total $ 7,916.92.  (*See* Reply Bf at Exh. A).  Nonetheless, based on its review of these expense records, the Court notes that neither Dr. Simring nor Litman provide any explanation to support reimbursement for consulting fees for two individuals who performed work on September 1, 2005 and September 28, 2005.  Without providing any justification or context for these expenses, the Court recommends that such expenses not be allowed.  Thus, the Court recommends that Dr. Simring be reimbursed for only $265.19 in  for those reasonable expenses and costs, which were adequately documented.

With respect to the $ 17,616.00 in expenses and costs sought by Mr. Furst for the work performed by Steven Altman, this Court has already determined that such work, whether undertaken as a consultant or a legal advocate, is not properly compensable.  Thus, the Court recommends that Dr. Simring not be reimbursed for the $ 17,616.00 in fees associated with

Altman's work, and that Dr. Simring be reimbursed for only $ 1, 020.26 in expenses and costs

concerning attorney Furst's efforts.


IV.    **CONCLUSION**

      In light of the foregoing, the Court recommends that the District Court grant Dr.

Simring's fee application but reduce the amount of legal fees and costs requested to more

appropriately reflect the reasonable efforts required to prosecute this action against the UMDNJ

defendants.  As such, the Court recommends that Dr. Simring be reimbursed by the UMDNJ

defendants for the following amount of reasonable attorneys' fees and costs:

      <u>Harry Litman:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 267,197.40 |
| <u>Costs To Be Paid:</u> | <u>$      265.19</u> |
| Total: | $ 267,462.59 |

      <u>Henry Furst:</u>

| | |
|---|---|
| Legal Fees To Be Paid: | $ 97,384.25 |
| <u>Costs To Be Paid:</u> | <u>$   1,020.26</u> |
| Total: | $ 98,404.51 |

| | |
|---|---|
| **Total Attorneys' Fees and Costs To Be Paid:** | $ 364,581.65 (fees) |
| | $    1,285.45 (costs) |

| | |
|---|---|
| **Total Attorneys' Fees and Costs Award:** | $ 365,867.10 (total) |

33

The parties have fourteen (14) days from receipt hereof to file and serve objections.


*s/Madeline Cox Arleo*_____

**MADELINE COX ARLEO**
**United States Magistrate Judge**


DATED: October 2, 2012


cc:     Clerk
        Hon. Peter G. Sheridan, U.S.D.J.
        File