```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2

 3
   _____
 4 UNITED STATES OF AMERICA,
   ex rel, STEVEN SIMRING,
 5              PLAINTIFFS

 6      Vs.                                   CIVIL NO.
                                              04-3530 (PGS)
 7 UNIVERSITY PHYSICIAN ASSOCIATES,
   et al,
 8              DEFENDANTS
   _____
 9

10
                                    JANUARY 7, 2013
11                                  CLARKSON S. FISHER COURTHOUSE
                                    402 EAST STATE STREET
12                                  TRENTON, NEW JERSEY  08608

13

14

15 B E F O R E:     THE HONORABLE PETER G. SHERIDAN
                    U.S. DISTRICT COURT JUDGE
16                  DISTRICT OF NEW JERSEY

17

18

19

20 HEARING ON MOTION FOR FEES

21

22

23                      Certified as true and correct as required
                        by Title 28, U.S.C. Section 753
24                      /S/ Francis J. Gable
                        FRANCIS J. GABLE, C.S.R., R.M.R.
25                      OFFICIAL U.S. REPORTER
                        (856) 889-4761
```

*United States District Court*
*Trenton, New Jersey*

*1*

*2* A P P E A R A N C E S:

*3*

*4* STONE & MAGNANINI, LLP
BY:   ROBERT A. MAGNANINI, ESQUIRE
*5*       DAVID S. STONE, ESQUIRE
          DAVID S. CHASE, ESQUIRE
*6* FOR THE PLAINTIFF

*7*

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
*8* BY:   WALTER F. TIMPONE, ESQUIRE
          KRISTOFFER S. BURFITT, ESQUIRE
*9* FOR THE DEFENDANT

*10*

HARRY LITMAN, ESQUIRE
*11*

*12*

*13*

*14*

*15*

*16*

*17*

*18*

*19*

*20*

*21*

*22*

*23*

*24*

*25*

1   THE COURT: So this is the matter of Simring versus
2   University Physician Associates. Can we have appearances?
3   We'll start with the plaintiffs.
4   MR. MAGNANINI: Yes, your Honor, Robert Magnanini,
5   David Stone and David Chase from the firm of Stone and
6   Magnanini for plaintiff Dr. Simring. And with me I also have
7   Harry Litman who is Dr. Simring's attorney since 2005.
8   THE COURT: Good afternoon.
9   MR. LITMAN: Judge, I was just going to say that I'm
10  actually here only for the purpose of the fees relating to
11  Stone and Magnanini, but I don't intend to present argument
12  unless your Honor wants it on that issue.
13  THE COURT: Okay, thank you.
14  MR. TIMPONE: Walter Timpone, your Honor, McElroy,
15  Deutsch, Mulvaney and Carpenter, with Chris Burfitt on behalf
16  of UMDNJ.
17  THE COURT: Good afternoon.
18  I have the report and recommendation from Judge
19  Arleo, and there's been objections filed by Stone and
20  Magnanini, so do you wish to argue?
21  MR. MAGNANINI: Yes, your Honor.
22  THE COURT: All right. It's your turn.
23  MR. MAGNANINI: Thank you, your Honor.
24  THE COURT: So I would think that if we could spend
25  10 minutes each, and move on from there if that's okay.

1  MR. MAGNANINI: Good, your Honor, I'll just hit the
2  high points. Your Honor, I guess to just start off is you
3  have the basic question are why are we here, and this is
4  something more than lawyers fighting about their fees.
5  Especially in the context of the False Claims Act, and Section
6  3730(d)(1) provides that a prevailing party get its fees. And
7  there's no dispute here that Dr. Simring was a prevailing
8  party. He bought a qui tam back in 2004 against UMDMJ. What
9  they were doing was they were double billing the government
10 for the same services, and this fraud had been going on for at
11 least four years. Dr. Simring had gone to his supervisors,
12 tried to get this fraud stopped and their methodology changed,
13 that failed. So in 2004 he retained Mr. Furst to file a qui
14 tam action which he did.
15        The qui tam proceeded along until I guess July of
16 2005. At this point Dr. Simring brought in Mr. Litman and to
17 handle negotiations with the government, and a 11th Amendment
18 issue under the *Stevens* case. Which was whether UMDNJ, which
19 was a quasi state agency, could be sued as an arm of the
20 state, or was it immune to suit.
21        Mr. Litman and Mr. Furst presented an amended
22 complaint and filed that. They worked with the Government and
23 the U.S. Attorney for the District of New Jersey, ended up
24 negotiating a deferred prosecution agreement with UMDNJ. That
25 ended the criminal part of the investigation.

00:02

00:03

00:03

00:03

00:04

1    At that point the U.S. Attorney's Office for New
2    Jersey was recused from the matter, and the entire case was
3    handled by the main justice of the Department of Justice in
4    Washington, DC.  And Mr. Litman and Mr. Furst litigated this
5    case from 2005 then, all the way through the settlement in
6    June of 2009.
7         And what they had to do was fight a lot of advocacy
8    on behalf of UMDNJ, that their amended complaint would survive
9    any sort of 9(b) motion, that the *Stevens* case and the 11th
10   Amendment did not pose a threat to the case, and convince the
11   government to both intervene and settle the case.  That
12   happened in --
13        THE COURT:  I think you should focus on -- why don't
14   you tell me why you think Judge Arleo was wrong in her --
15        MR. MAGNANINI:  That's what I'm getting to, your
16   Honor.  This is an odd case in that both the parties agree
17   that we're entitled to fees.  What Judge Arleo's R & R does
18   that we think is wrong is that -- is that it does more than
19   reduce the prevailing party's attorneys fees.  What it does is
20   it undercuts the purposes of Congress's intent by the fee
21   shifting statutes, by rewarding delay and deterring people
22   from filing cases in New Jersey.
23        And as Mr. Stone had said earlier, he was here
24   because Stone and Magnanini, which was retained by Dr. Simring
25   to pursue just the fee litigation after the case was settled,

|  |  |
|---|---|
|  | 1   we worked on the case for three years and our fee petition was |
|  | 2   not even before Judge Arleo, but it was presumptively denied |
|  | 3   that we would receive nothing. |
|  | 4          So we found that position initially to be both what |
| 00:04 | 5   *Citizens v. Overton Park* said arbitrary and capricious.  This |
|  | 6   cannot stand, it avoids Congress' intent, it's against Supreme |
|  | 7   Court precedent and against the precedent throughout the Third |
|  | 8   Circuit.  And so when we were looking -- |
|  | 9          THE COURT:  What do you think about -- you know, you |
| 00:04 | 10  had both billing in certain instances where a whole bunch of |
|  | 11  tasks were raised under one entry on the bills, and then Judge |
|  | 12  Arleo seemed to try to figure out how do I deal with this |
|  | 13  because there was different rates for research work as opposed |
|  | 14  to regular work.  And she spent a lot of time looking at the |
| 00:05 | 15  case and trying to come up with a just decision. |
|  | 16         MR. MAGNANINI:  I understand that, your Honor.  In |
|  | 17  all of our dealings with Judge Arleo she's always been a |
|  | 18  thoughtful and intelligent judge, we just disagree with this. |
|  | 19  One thing is we do a lot of False Claims Act work at Stone and |
| 00:05 | 20  Magnanini, we have maybe 40 False Claims Act, and we bill in |
|  | 21  block billing because it's allowed under the Third Circuit |
|  | 22  precedent, and it's allowed in the District under Judge |
|  | 23  Wigenton's *NCH* case.  And even in Pennsylvania where we've |
|  | 24  done it, too. |
| 00:05 | 25         And one of the other things despite beyond the |

1  dispute with the block billing, was the idea that different --
2  you should get rewarded different amounts per hour for
3  different tasks.  Mr. Litman and Mr. Furst both prosecuted
4  this case, they only have each other in their respective
5  firms.  There was no one Mr. Litman could get to do the
6  research for him.  And I can tell you at our small firm of
7  nine lawyers, even though we have associates that do research,
8  David and I as the partners read the research, we look at
9  things ourself to make sure things get done.
10              And when you look at the Third Circuit precedent
11  there isn't a distinction made for making -- you know, I think
12  at one point Judge Arleo suggested that if you did ministerial
13  tasks you'd only be awarded $95 an hour.  And again, for false
14  claims practitioners, the most important things we do are
15  those ministerial tasks, we talk to the Government, we talk to
16  the client.
17              THE COURT:  One other point I'd like you to address
18  is, UMDNJ, the University of Dentistry and Medicine of New
19  Jersey, one of the problems is, it's teetering on whether it
20  will continue in the sense that I think there's been a new
21  legislative action where some of the work goes to Rutgers and
22  maybe the hospital stands by itself.  But as a result, how do
23  you handle a defendant in this case who doesn't have that much
24  financial capability.  Can it be handled or thought about when
25  I decide this case?

00:08

00:08

00:08

00:08

00:08

1      MR. MAGNANINI: Well your Honor, I think there's two
2 parts to that question. One is, as I was saying, my partner's
3 favorite analogy is the kid pleading the court for mercy in
4 murder for killing his parents because he's an orphan. The
5 reason UMDMJ is in this position is they were committing fraud
6 and stealing money, not just from the federal government, but
7 from the state government as well. And then they settled that
8 case, and -- but as part of the settlement to deter people
9 from doing this in the future and to offset costs to the
10 relator, is they have to pay the fees. And if you look at all
11 the Third Circuit fee dispute cases, ability to pay just
12 doesn't ever come into it, it's not a viable part of the
13 calculations.
14      THE COURT: So, if you get a judgment and they can't
15 pay, you're up the creek.
16      MR. MAGNANINI: We would be, although what I've seen
17 actually in other False Claims Act cases, your Honor, is we
18 see actually where entities have claimed that they were going
19 to go under and something like that, we've seen deterred
20 payment schedules.
21      Now, I'm not -- Mr. Litman's looking at me with
22 daggers probably, I don't want some five year note --
23      THE COURT: He's not.
24      MR. MAGNANINI: -- on an eight year old case here.
25 But that I've seen get put into effect when entities have said

*United States District Court*
*Trenton, New Jersey*

1  they can't pay, but as a Court you're not allowed to consider
2  their financial position.  The reason they have to pay is they
3  committed this fraud.  And of course, we're in this position
4  too, which was had this case been wrapped up and had the fees
5  been paid back in June of 2009, you would have had a lower
6  rate from Mr. Litman and Mr. Furst; you would have had no
7  costs incurred by Stone and Magnanini, we would have happily
8  gone on our way and worked on our other cases; and the fees
9  petition wouldn't be as large as it is.
10              And the problem with this is, the longer the
11 litigation continues, the more fees we amass, and the more
12 costs UMDNJ --
13              THE COURT:  What if I grant your request on your
14 application of fees on -- fees on fees is what we've been
15 referring it to, so if I do that how do I proceed on the case?
16              MR. MAGNANINI:  I think what you'd have to do, your
17 Honor, is procedurally vacate the R & R, and then make a
18 finding on the actual amount --
19              THE COURT:  I'll figure that out that --
20              MR. MAGNANINI:  -- of fees to be awarded.
21              THE COURT:  Then what do I do, you're going to
22 submit --
23              MR. MAGNANINI:  Then I believe we would have to
24 submit an application for fees.  And besides Stone and
25 Magnanini, Mr. Litman and Mr. Furst have incurred fees

|  |  |
|---|---|
|  | 1  collecting their fees as well, your Honor.  That's what I was |
|  | 2  saying, that in some cases the Department of Justice tries to |
|  | 3  get this all done at once.  So the fee part gets settled along |
|  | 4  with the regular qui tam case and then it's all done. |
| 00:10 | 5              THE COURT:  Can I split this case in two and resolve |
|  | 6  the fees under the main case, and then have a second |
|  | 7  proceeding with regard to fees on fees? |
|  | 8              MR. MAGNANINI:  I believe you could do that, your |
|  | 9  Honor, and I'd actually wouldn't object to that.  That will |
| 00:10 | 10 get Mr. Simring's and his other lawyers paid sooner, that'd be |
|  | 11 good. |
|  | 12             THE COURT:  Do you have any other points? |
|  | 13             MR. MAGNANINI:  No, your Honor.  You've got our |
|  | 14 papers, we've got -- I believe the Third Circuit and the |
| 00:11 | 15 Supreme Court precedent favors us on this one, and we'll -- |
|  | 16 you know, as they said, if you have the law pound on the law, |
|  | 17 I think we have that; if you have the facts pound on the |
|  | 18 facts, I think we have that so I won't pound on the table. |
|  | 19             THE COURT:  Okay. That's great. But the problem |
| 00:11 | 20 you have is there's been a order that enters an award of |
|  | 21 $363,000, and Judge Arleo seems to have spent a significant |
|  | 22 amount of time trying to come up with a reasonable amount in |
|  | 23 light of the circumstances and the facts and the time spent by |
|  | 24 the lawyers.  So I don't know if the law helps you on that or |
| 00:11 | 25 whatever, you know. |

1  MR. MAGNANINI:  I think the law does, your Honor.
2  When you go through the Third Circuit cases it talks about
3  specific entries that can be cut.  And Judge Arleo focused on
4  specific entries when dealing with the legal research
5  conducted by Mr. Litman and Mr. Furst.  But then as you went
6  through each of the other categories there weren't any
7  specific entries cited, there were just of broad --
8  THE COURT:  The problem with Mr. Litman -- I forget
9  his hourly rate, but --
10  MR. MAGNANINI:  It's 825, your Honor.
11  THE COURT:  Right.
12  MR. MAGNANINI:  It was.
13  THE COURT:  It's hard to grant as reasonable $825 an
14  hour for research is really the issue that people have.
15  MR. MAGNANINI:  Again, your Honor, the problem I
16  have -- and I'm not arguing on behalf of the solo and small
17  firm practice group of the bar, but when you only have one
18  person in the office -- and when you look at Mr. Litman's
19  other specific entries for research, they're not 10 hours, 20
20  hours, they're .5, they're .7, they're .4.
21  THE COURT:  I understand, I was just making a point.
22  MR. MAGNANINI:  I understand, your Honor.
23  THE COURT:  All right, thank you.
24  Mr. Timpone.
25  MR. TIMPONE:  Thank you, Judge.  Judge, Judge Arleo

1  produced a comprehensive and thoughtful 34 page report.  She
2  gave them more than we asked her to give them and gave them
3  less than they asked for.  Importantly she supported her
4  report at return.
5          Now, the plaintiff has assails the report as
6  accepting a wildly, inaccurate and trivializing account of FCA
7  advocacy.  We're are assailed for causing delay by challenging
8  fees of over a million dollars on a case that was never
9  litigated; no depositions, no interrogatories, no motion
10 practice, no document discovery, no pro hac vice motion,
11 Judge.
12         And all of that is because when we entered into a
13 deferred prosecution agreement with the government on the
14 criminal side of the house, and admitted the double billing,
15 plaintiff only had to ride the government's coat-tails to
16 recovery.
17         THE COURT:  But when you go through the bills, there
18 was so many meetings they attended and the plaintiff's lawyers
19 had spent significant time with the Department of Justice
20 trying to get through the case, giving the Department of
21 Justice the facts that they had developed during the
22 investigation, things of that matter, you know.
23         MR. TIMPONE:  Except, Judge, that the United States
24 Attorney's Office did its own investigation, and they did a
25 criminal investigation and at the end of the day we agreed to

1    enter into a deferred prosecution agreement and we -- we

2    basically admitted to the fraud.  So, a lot of the work was

3    done by that time.

4           And so, the role that we have taken is that -- that

5    we are in a position of trying to -- to defend a teetering

6    university trying to stay afloat.  And there is case law on

7    this, Judge, and there's case law on this in this Circuit that

8    talks about, you know, making sure that hospitals and

9    universities are not -- are not impacted by paying unwarranted

10   fees.

11          DOJ recognized that situation when it agreed to

12   forego it's traditional demand of treble damages in favor of

13   simply recovering the monies overbilled plus interest.  So

14   instead of a $17 million demand, DOJ agreed to a $4.4 million

15   settlement, with Dr. Simring receiving $800,000.

16          That takes into account the fact that this is a

17   public university, a public hospital, which is probably not

18   going to be in existence for much longer.  And the reason that

19   it's not going to be in existence much longer has nothing to

20   do with this case and the deferred prosecution agreement.  It

21   is a lot to do with the fact that UMDNJ exists to serve a

22   community in Newark in Essex County, that is -- that is

23   unrepresented by insureds, and is filled with charity care.  I

24   mean just filled with charity care that the university

25   provides without receiving sufficient remuneration.

```
                1         And that's not a discussion for us today, but it is
                2    an example of some of the things that have gone on with
                3    UMDNJ --
                4         THE COURT:  In your brief, Mr. Timpone, did you
00:16           5    refer to a case or cite a case that says the Court can
                6    consider the financial status?
                7         MR. TIMPONE:  Yes, Judge, it's the West Chester
                8    University of Pennsylvania case, and I can grab you the cite.
                9         THE COURT:  I got it.  Thank you.  And what do you
00:16          10    think about the fee on fee case?  It seems to me that there's
               11    been a dispute all along about the fees of the plaintiff, and
               12    Stone and Magnanini has spent a lot of time trying to come up
               13    with a reasonable value on the fees of plaintiffs.  What's
               14    your viewpoint on that?
00:17          15         MR. TIMPONE:  I'm happy to take a look at their
               16    application and to make a determination from that point,
               17    Judge.
               18         THE COURT:  All right.  So if I allow it and there
               19    is an application you'd reviewed their application?  All
00:17          20    right.
               21         MR. TIMPONE:  And then we can meet again.
               22         THE COURT:  All right.  Any other issues that you
               23    have?
               24         MR. TIMPONE:  No, Judge, just that we'll rely on our
00:17          25    briefs and thank you for your time this morning.
```

*United States District Court*
*Trenton, New Jersey*

```
00:17




00:17
```

1  THE COURT:  All right, thank you.
2  So, I'll review the brief once more, as well as the
3 report and recommendation, and I'll make some findings with
4 regard to it, and a new schedule.  I should say that we did
5 attempt to settle -- or I tried to settle, but the parties are
6 very far apart.  So, we'll just continue with the report and
7 recommendation phase.
8  So if you give me like three or four weeks I should
9 have an answer.
10  (Counsel say thank you.)
11  THE COURT:  All right.  Thank you for coming.
12  THE DEPUTY CLERK:  All rise.
13  (Matter concluded.)
14
15
16
17
18
19
20
21
22
23
24
25

## $

**$17** [1] - 13:14
**$363,000** [1] - 10:21
**$800,000** [1] - 13:15
**$825** [1] - 11:13
**$95** [1] - 7:13

## /

**/S** [1] - 1:24

## 0

**04-3530** [1] - 1:6
**08608** [1] - 1:12

## 1

**10** [2] - 3:25, 11:19
**11th** [2] - 4:17, 5:9

## 2

**20** [1] - 11:19
**2004** [2] - 4:8, 4:13
**2005** [3] - 3:7, 4:16, 5:5
**2009** [2] - 5:6, 9:5
**2012** [1] - 1:10
**28** [1] - 1:23

## 3

**34** [1] - 12:1
**3730(d)(1** [1] - 4:6

## 4

**4** [1] - 11:20
**4.4** [1] - 13:14
**40** [1] - 6:20
**402** [1] - 1:11

## 5

**5** [1] - 11:20

## 7

**7** [2] - 1:10, 11:20
**753** [1] - 1:23

## 8

**825** [1] - 11:10
**856** [1] - 1:25
**889-4761** [1] - 1:25

## 9

**9(b** [1] - 5:9

## A

**ability** [1] - 8:11
**accepting** [1] - 12:6
**account** [2] - 12:6, 13:16
**Act** [4] - 4:5, 6:19, 6:20, 8:17
**action** [2] - 4:14, 7:21
**actual** [1] - 9:18
**address** [1] - 7:17
**admitted** [2] - 12:14, 13:2
**advocacy** [2] - 5:7, 12:7
**afloat** [1] - 13:6
**afternoon** [2] - 3:8, 3:17
**agency** [1] - 4:19
**agree** [1] - 5:16
**agreed** [3] - 12:25, 13:11, 13:14
**agreement** [4] - 4:24, 12:13, 13:1, 13:20
**al** [1] - 1:7
**allow** [1] - 14:18
**allowed** [3] - 6:21, 6:22, 9:1
**amass** [1] - 9:11
**amended** [2] - 4:21, 5:8
**Amendment** [2] - 4:17, 5:10
**AMERICA** [1] - 1:4
**amount** [3] - 9:18, 10:22
**amounts** [1] - 7:2
**analogy** [1] - 8:3
**answer** [1] - 15:9
**apart** [1] - 15:6
**appearances** [1] - 3:2
**application** [5] - 9:14, 9:24, 14:16, 14:19
**arbitrary** [1] - 6:5
**argue** [1] - 3:20
**arguing** [1] - 11:16
**argument** [1] - 3:11
**Arleo** [9] - 3:19, 5:14, 6:2, 6:12, 6:17, 7:12, 10:21, 11:3, 11:25
**Arleo's** [1] - 5:17
**arm** [1] - 4:19
**assailed** [1] - 12:7
**assails** [1] - 12:5
**Associates** [1] - 3:2
**ASSOCIATES** [1] - 1:7
**associates** [1] - 7:7
**attempt** [1] - 15:5
**attended** [1] - 12:18
**Attorney** [1] - 4:23
**attorney** [1] - 3:7
**Attorney's** [2] - 5:1, 12:24
**attorneys** [1] - 5:19
**avoids** [1] - 6:6
**award** [1] - 10:20
**awarded** [2] - 7:13, 9:20

## B

**bar** [1] - 11:17
**basic** [1] - 4:3
**behalf** [3] - 3:15, 5:8, 11:16
**beyond** [1] - 6:25
**bill** [1] - 6:20
**billing** [5] - 4:9, 6:10, 6:21, 7:1, 12:14
**bills** [2] - 6:11, 12:17
**block** [2] - 6:21, 7:1
**bought** [1] - 4:8
**brief** [2] - 14:4, 15:2
**briefs** [1] - 14:25
**broad** [1] - 11:7
**brought** [1] - 4:16
**bunch** [1] - 6:10
**BURFITT** [1] - 2:8
**Burfitt** [1] - 3:15
**BY** [2] - 2:4, 2:8

## C

**C.S.R** [1] - 1:24
**calculations** [1] - 8:13
**cannot** [1] - 6:6
**capability** [1] - 7:24
**capricious** [1] - 6:5
**care** [2] - 13:23, 13:24
**CARPENTER** [1] - 2:7
**Carpenter** [1] - 3:15
**case** [30] - 4:18, 5:2, 5:5, 5:9, 5:10, 5:11, 5:16, 5:25, 6:1, 6:15, 6:23, 7:4, 7:23, 7:25, 8:8, 8:24, 9:4, 9:15, 10:4, 10:5, 10:6, 12:8, 12:20, 13:6, 13:7, 13:20, 14:5, 14:8, 14:10
**cases** [6] - 5:22, 8:11, 8:17, 9:8, 10:2, 11:2
**categories** [1] - 11:6
**causing** [1] - 12:7
**certain** [1] - 6:10
**Certified** [1] - 1:23
**challenging** [1] - 12:7
**changed** [1] - 4:12
**charity** [2] - 13:23, 13:24
**CHASE** [1] - 2:5
**Chase** [1] - 3:5
**Chester** [1] - 14:7
**Chris** [1] - 3:15
**Circuit** [7] - 6:8, 6:21, 7:10, 8:11, 10:14, 11:2, 13:7
**circumstances** [1] - 10:23
**cite** [2] - 14:5, 14:8
**cited** [1] - 11:7
**Citizens** [1] - 6:5
**CIVIL** [1] - 1:6
**claimed** [1] - 8:18
**claims** [1] - 7:14
**Claims** [4] - 4:5, 6:19, 6:20, 8:17
**CLARKSON** [1] - 1:11
**CLERK** [1] - 15:12
**client** [1] - 7:16
**coat** [1] - 12:15
**coat-tails** [1] - 12:15
**collecting** [1] - 10:1
**coming** [1] - 15:11
**committed** [1] - 9:3
**committing** [1] - 8:5
**community** [1] - 13:22
**complaint** [2] - 4:22, 5:8
**comprehensive** [1] - 12:1
**concluded** [1] - 15:13
**conducted** [1] - 11:5
**Congress'** [1] - 6:6
**Congress's** [1] - 5:20
**consider** [2] - 9:1, 14:6
**context** [1] - 4:5
**continue** [2] - 7:20, 15:6
**continues** [1] - 9:11
**convince** [1] - 5:10
**correct** [1] - 1:23
**costs** [3] - 8:9, 9:7, 9:12
**Counsel** [1] - 15:10
**County** [1] - 13:22
**course** [1] - 9:3
**court** [1] - 8:3
**COURT** [31] - 1:1, 1:15, 3:1, 3:8, 3:13, 3:17, 3:22, 3:24, 5:13, 6:9, 7:17, 8:14, 8:23, 9:13, 9:19, 9:21, 10:5, 10:12, 10:19, 11:8, 11:11, 11:13, 11:21, 11:23, 12:17, 14:4, 14:9, 14:18, 14:22, 15:1, 15:11
**Court** [4] - 6:7, 9:1, 10:15, 14:5
**COURTHOUSE** [1] - 1:11
**creek** [1] - 8:15
**criminal** [3] - 4:25, 12:14, 12:25
**cut** [1] - 11:3

## D

**daggers** [1] - 8:22
**damages** [1] - 13:12
**DAVID** [2] - 2:5, 2:5
**David** [3] - 3:5, 7:8
**DC** [1] - 5:4
**deal** [1] - 6:12
**dealing** [1] - 11:4
**dealings** [1] - 6:17
**decide** [1] - 7:25
**decision** [1] - 6:15
**defend** [1] - 13:5
**defendant** [1] - 7:23
**DEFENDANT** [1] - 2:9
**DEFENDANTS** [1] - 1:8
**deferred** [4] - 4:24, 12:13, 13:1, 13:20
**delay** [2] - 5:21, 12:7
**demand** [2] - 13:12, 13:14
**denied** [1] - 6:2
**Dentistry** [1] - 7:18
**Department** [4] - 5:3, 10:2, 12:19, 12:20
**depositions** [1] - 12:9
**DEPUTY** [1] - 15:12
**despite** [1] - 6:25
**deter** [1] - 8:8
**determination** [1] - 14:16
**deterred** [1] - 8:19
**deterring** [1] - 5:21

Case 3:04-cv-03530-PGS-DEA   Document 168   Filed 05/22/14   Page 17 of 19 PageID: 1735

*17*

DEUTSCH [1] - 2:7
Deutsch [1] - 3:15
developed [1] - 12:21
different [4] - 6:13, 7:1, 7:2, 7:3
disagree [1] - 6:18
discovery [1] - 12:10
discussion [1] - 14:1
dispute [4] - 4:7, 7:1, 8:11, 14:11
distinction [1] - 7:11
District [2] - 4:23, 6:22
DISTRICT [4] - 1:1, 1:1, 1:15, 1:16
document [1] - 12:10
DOJ [2] - 13:11, 13:14
dollars [1] - 12:8
done [5] - 6:24, 7:9, 10:3, 10:4, 13:3
double [2] - 4:9, 12:14
Dr [7] - 3:6, 3:7, 4:7, 4:11, 4:16, 5:24, 13:15
during [1] - 12:21

**E**

EAST [1] - 1:11
effect [1] - 8:25
eight [1] - 8:24
end [1] - 12:25
ended [2] - 4:23, 4:25
enter [1] - 13:1
entered [1] - 12:12
enters [1] - 10:20
entire [1] - 5:2
entities [2] - 8:18, 8:25
entitled [1] - 5:17
entries [4] - 11:3, 11:4, 11:7, 11:19
entry [1] - 6:11
Especially [1] - 4:5
ESQUIRE [6] - 2:4, 2:5, 2:5, 2:8, 2:8, 2:10
Essex [1] - 13:22
et [1] - 1:7
ex [1] - 1:4
example [1] - 14:2
Except [1] - 12:23
existence [2] - 13:18, 13:19
exists [1] - 13:21

**F**

fact [2] - 13:16, 13:21
facts [4] - 10:17, 10:18, 10:23, 12:21
failed [1] - 4:13
false [1] - 7:13
False [4] - 4:5, 6:19, 6:20, 8:17
far [1] - 15:6
favor [1] - 13:12
favorite [1] - 8:3
favors [1] - 10:15
FCA [1] - 12:6
federal [1] - 8:6
fee [7] - 5:20, 5:25, 6:1, 8:11, 10:3, 14:10
fees [23] - 3:10, 4:4, 4:6, 5:17, 5:19, 8:10, 9:4, 9:8, 9:11, 9:14, 9:20, 9:24, 9:25, 10:1, 10:6, 10:7, 12:8, 13:10, 14:11, 14:13
FEES [1] - 1:20
fight [1] - 5:7
fighting [1] - 4:4
figure [2] - 6:12, 9:19
file [1] - 4:13
filed [2] - 3:19, 4:22
filing [1] - 5:22
filled [2] - 13:23, 13:24
financial [3] - 7:24, 9:2, 14:6
findings [1] - 15:3
firm [3] - 3:5, 7:6, 11:17
firms [1] - 7:5
FISHER [1] - 1:11
five [1] - 8:22
focus [1] - 5:13
focused [1] - 11:3
FOR [3] - 1:20, 2:6, 2:9
forego [1] - 13:12
forget [1] - 11:8
four [2] - 4:11, 15:8
Francis [1] - 1:24
FRANCIS [1] - 1:24
fraud [5] - 4:10, 4:12, 8:5, 9:3, 13:2
Furst [7] - 4:13, 4:21, 5:4, 7:3, 9:6, 9:25, 11:5
future [1] - 8:9

**G**

Gable [1] - 1:24
GABLE [1] - 1:24
government [6] - 4:9, 4:17, 5:11, 8:6, 8:7, 12:13
Government [2] - 4:22, 7:15
government's [1] - 12:15
grab [1] - 14:8
grant [2] - 9:13, 11:13
great [1] - 10:19
group [1] - 11:17
guess [2] - 4:2, 4:15

**H**

hac [1] - 12:10
handle [2] - 4:17, 7:23
handled [2] - 5:3, 7:24
happily [1] - 9:7
happy [1] - 14:15
hard [1] - 11:13
HARRY [1] - 2:10
Harry [1] - 3:7
HEARING [1] - 1:20
helps [1] - 10:24
high [1] - 4:2
hit [1] - 4:1
Honor [19] - 3:4, 3:12, 3:14, 3:21, 3:23, 4:1, 4:2, 5:16, 6:16, 8:1, 8:17, 9:17, 10:1, 10:9, 10:13, 11:1, 11:10, 11:15, 11:22
HONORABLE [1] - 1:15
hospital [2] - 7:22, 13:17
hospitals [1] - 13:8
hour [3] - 7:2, 7:13, 11:14
hourly [1] - 11:9
hours [2] - 11:19, 11:20
house [1] - 12:14

**I**

idea [1] - 7:1
immune [1] - 4:20
impacted [1] - 13:9
important [1] - 7:14
Importantly [1] - 12:3
inaccurate [1] - 12:6
incurred [2] - 9:7, 9:25
instances [1] - 6:10
instead [1] - 13:14
insureds [1] - 13:23
intelligent [1] - 6:18
intend [1] - 3:11
intent [2] - 5:20, 6:6
interest [1] - 13:13
interrogatories [1] - 12:9
intervene [1] - 5:11
investigation [4] - 4:25, 12:22, 12:24, 12:25
issue [3] - 3:12, 4:18, 11:14
issues [1] - 14:22
itself [1] - 7:22

**J**

JANUARY [1] - 1:10
Jersey [4] - 4:23, 5:2, 5:22, 7:19
JERSEY [3] - 1:1, 1:12, 1:16
Judge [20] - 3:9, 3:18, 5:14, 5:17, 6:2, 6:11, 6:17, 6:22, 7:12, 10:21, 11:3, 11:25, 12:11, 12:23, 13:7, 14:7, 14:17, 14:24
judge [1] - 6:18
JUDGE [1] - 1:15
judgment [1] - 8:14
July [1] - 4:15
June [2] - 5:6, 9:5
justice [1] - 5:3
Justice [4] - 5:3, 10:2, 12:19, 12:21

**K**

kid [1] - 8:3
killing [1] - 8:4
KRISTOFFER [1] - 2:8

**L**

large [1] - 9:9
law [6] - 10:16, 10:24, 11:1, 13:6, 13:7
lawyers [5] - 4:4, 7:7, 10:10, 10:24, 12:18
least [1] - 4:11
legal [1] - 11:4
legislative [1] - 7:21
less [1] - 12:3
light [1] - 10:23
litigated [2] - 5:4, 12:9
litigation [2] - 5:25, 9:11
LITMAN [2] - 2:10, 3:9
Litman [10] - 3:7, 4:16, 4:21, 5:4, 7:3, 7:5, 9:6, 9:25, 11:5, 11:8
Litman's [2] - 8:21, 11:18
LLP [2] - 2:4, 2:7
look [5] - 7:8, 7:10, 8:10, 11:18, 14:15
looking [3] - 6:8, 6:14, 8:21
lower [1] - 9:5

**M**

MAGNANINI [21] - 2:4, 2:4, 3:4, 3:21, 3:23, 4:1, 5:15, 6:16, 8:1, 8:16, 8:24, 9:16, 9:20, 9:23, 10:8, 10:13, 11:1, 11:10, 11:12, 11:15, 11:22
Magnanini [9] - 3:4, 3:6, 3:11, 3:20, 5:24, 6:20, 9:7, 9:25, 14:12
main [2] - 5:3, 10:6
matter [3] - 3:1, 5:2, 12:22
Matter [1] - 15:13
McElroy [2] - 2:7, 3:14
mean [1] - 13:24
Medicine [1] - 7:18
meet [1] - 14:21
meetings [1] - 12:18
mercy [1] - 8:3
methodology [1] - 4:12
million [3] - 12:8, 13:14
ministerial [2] - 7:12, 7:15
minutes [1] - 3:25
money [1] - 8:6
monies [1] - 13:13
morning [1] - 14:25
most [1] - 7:14
MOTION [1] - 1:20
motion [3] - 5:9, 12:9, 12:10
move [1] - 3:25
MR [27] - 3:4, 3:9, 3:14, 3:21, 3:23, 4:1, 5:15, 6:16, 8:1, 8:16, 8:24, 9:16, 9:20, 9:23, 10:8, 10:13, 11:1, 11:10, 11:12, 11:15, 11:22, 11:25, 12:23, 14:7, 14:15, 14:21, 14:24
MULVANEY [1] - 2:7

*United States District Court*
*Trenton, New Jersey*

**Mulvaney** [1] - 3:15
**murder** [1] - 8:4

### N

**NCH** [1] - 6:23
**negotiating** [1] - 4:24
**negotiations** [1] - 4:17
**never** [1] - 12:8
**NEW** [3] - 1:1, 1:12, 1:16
**new** [2] - 7:20, 15:4
**New** [4] - 4:23, 5:1, 5:22, 7:18
**Newark** [1] - 13:22
**nine** [1] - 7:7
**NO** [1] - 1:6
**note** [1] - 8:22
**nothing** [2] - 6:3, 13:19

### O

**object** [1] - 10:9
**objections** [1] - 3:19
**odd** [1] - 5:16
**OF** [3] - 1:1, 1:4, 1:16
**office** [1] - 11:18
**Office** [2] - 5:1, 12:24
**OFFICIAL** [1] - 1:25
**offset** [1] - 8:9
**old** [1] - 8:24
**ON** [1] - 1:20
**once** [2] - 10:3, 15:2
**one** [7] - 6:11, 6:25, 7:5, 7:12, 7:19, 10:15, 11:17
**One** [3] - 6:19, 7:17, 8:2
**opposed** [1] - 6:13
**order** [1] - 10:20
**orphan** [1] - 8:4
**ourself** [1] - 7:9
**overbilled** [1] - 13:13
**Overton** [1] - 6:5
**own** [1] - 12:24

### P

**page** [1] - 12:1
**paid** [2] - 9:5, 10:10
**papers** [1] - 10:14
**parents** [1] - 8:4
**Park** [1] - 6:5
**part** [4] - 4:25, 8:8, 8:12, 10:3
**parties** [2] - 5:16, 15:5

**partner's** [1] - 8:2
**partners** [1] - 7:8
**parts** [1] - 8:2
**party** [2] - 4:6, 4:8
**party's** [1] - 5:19
**pay** [5] - 8:10, 8:11, 8:15, 9:1, 9:2
**paying** [1] - 13:9
**payment** [1] - 8:20
**Pennsylvania** [2] - 6:23, 14:8
**people** [3] - 5:21, 8:8, 11:14
**per** [1] - 7:2
**person** [1] - 11:18
**PETER** [1] - 1:15
**petition** [2] - 6:1, 9:9
**PGS** [1] - 1:6
**phase** [1] - 15:7
**Physician** [1] - 3:2
**PHYSICIAN** [1] - 1:7
**PLAINTIFF** [1] - 2:6
**plaintiff** [4] - 3:6, 12:5, 12:15, 14:11
**plaintiff's** [1] - 12:18
**plaintiffs** [2] - 3:3, 14:13
**PLAINTIFFS** [1] - 1:5
**pleading** [1] - 8:3
**plus** [1] - 13:13
**point** [6] - 4:16, 5:1, 7:12, 7:17, 11:21, 14:16
**points** [2] - 4:2, 10:12
**pose** [1] - 5:10
**position** [5] - 6:4, 8:5, 9:2, 9:3, 13:5
**pound** [3] - 10:16, 10:17, 10:18
**practice** [2] - 11:17, 12:10
**practitioners** [1] - 7:14
**precedent** [5] - 6:7, 6:22, 7:10, 10:15
**present** [1] - 3:11
**presented** [1] - 4:21
**presumptively** [1] - 6:2
**prevailing** [3] - 4:6, 4:7, 5:19
**pro** [1] - 12:10
**problem** [4] - 9:10, 10:19, 11:8, 11:15
**problems** [1] - 7:19
**procedurally** [1] - 9:17
**proceed** [1] - 9:15
**proceeded** [1] - 4:15
**proceeding** [1] - 10:7

**produced** [1] - 12:1
**prosecuted** [1] - 7:3
**prosecution** [4] - 4:24, 12:13, 13:1, 13:20
**provides** [2] - 4:6, 13:25
**public** [2] - 13:17
**purpose** [1] - 3:10
**purposes** [1] - 5:20
**pursue** [1] - 5:25
**put** [1] - 8:25

### Q

**quasi** [1] - 4:19
**qui** [4] - 4:8, 4:13, 4:15, 10:4

### R

**R.M.R** [1] - 1:24
**raised** [1] - 6:11
**rate** [2] - 9:6, 11:9
**rates** [1] - 6:13
**read** [1] - 7:8
**really** [1] - 11:14
**reason** [3] - 8:5, 9:2, 13:18
**reasonable** [3] - 10:22, 11:13, 14:13
**receive** [1] - 6:3
**receiving** [2] - 13:15, 13:25
**recognized** [1] - 13:11
**recommendation** [3] - 3:18, 15:3, 15:7
**recovering** [1] - 13:13
**recovery** [1] - 12:16
**recused** [1] - 5:2
**reduce** [1] - 5:19
**refer** [1] - 14:5
**referring** [1] - 9:15
**regard** [2] - 10:7, 15:4
**regular** [2] - 6:14, 10:4
**rel** [1] - 1:4
**relating** [1] - 3:10
**relator** [1] - 8:10
**rely** [1] - 14:24
**remuneration** [1] - 13:25
**report** [6] - 3:18, 12:1, 12:4, 12:5, 15:3, 15:6
**REPORTER** [1] - 1:25
**request** [1] - 9:13
**required** [1] - 1:23
**research** [7] - 6:13,

7:6, 7:7, 7:8, 11:4, 11:14, 11:19
**resolve** [1] - 10:5
**respective** [1] - 7:4
**result** [1] - 7:22
**retained** [2] - 4:13, 5:24
**return** [1] - 12:4
**review** [1] - 15:2
**reviewed** [1] - 14:19
**rewarded** [1] - 7:2
**rewarding** [1] - 5:21
**ride** [1] - 12:15
**rise** [1] - 15:12
**ROBERT** [1] - 2:4
**Robert** [1] - 3:4
**role** [1] - 13:4
**Rutgers** [1] - 7:21

### S

**schedule** [1] - 15:4
**schedules** [1] - 8:20
**second** [1] - 10:6
**Section** [2] - 1:23, 4:5
**see** [1] - 8:18
**sense** [1] - 7:20
**serve** [1] - 13:21
**services** [1] - 4:10
**settle** [3] - 5:11, 15:5
**settled** [3] - 5:25, 8:7, 10:3
**settlement** [3] - 5:5, 8:8, 13:15
**SHERIDAN** [1] - 1:15
**shifting** [1] - 5:21
**side** [1] - 12:14
**significant** [2] - 10:21, 12:19
**simply** [1] - 13:13
**Simring** [7] - 3:1, 3:6, 4:7, 4:11, 4:16, 5:24, 13:15
**SIMRING** [1] - 1:4
**Simring's** [2] - 3:7, 10:10
**situation** [1] - 13:11
**small** [2] - 7:6, 11:16
**solo** [1] - 11:16
**sooner** [1] - 10:10
**sort** [1] - 5:9
**specific** [4] - 11:3, 11:4, 11:7, 11:19
**spend** [1] - 3:24
**spent** [5] - 6:14, 10:21, 10:23, 12:19, 14:12
**split** [1] - 10:5
**stand** [1] - 6:6

**stands** [1] - 7:22
**start** [2] - 3:3, 4:2
**state** [3] - 4:19, 4:20, 8:7
**STATE** [1] - 1:11
**States** [1] - 12:23
**STATES** [2] - 1:1, 1:4
**status** [1] - 14:6
**statutes** [1] - 5:21
**stay** [1] - 13:6
**stealing** [1] - 8:6
**STEVEN** [1] - 1:4
**Stevens** [2] - 4:18, 5:9
**STONE** [2] - 2:4, 2:5
**Stone** [10] - 3:5, 3:11, 3:19, 5:23, 5:24, 6:19, 9:7, 9:24, 14:12
**stopped** [1] - 4:12
**STREET** [1] - 1:11
**submit** [2] - 9:22, 9:24
**sued** [1] - 4:19
**sufficient** [1] - 13:25
**suggested** [1] - 7:12
**suit** [1] - 4:20
**supervisors** [1] - 4:11
**supported** [1] - 12:3
**Supreme** [2] - 6:6, 10:15
**survive** [1] - 5:8

### T

**table** [1] - 10:18
**tails** [1] - 12:15
**talks** [2] - 11:2, 13:8
**tam** [4] - 4:8, 4:14, 4:15, 10:4
**tasks** [4] - 6:11, 7:3, 7:13, 7:15
**teetering** [2] - 7:19, 13:5
**that'd** [1] - 10:10
**Third** [6] - 6:7, 6:21, 7:10, 8:11, 10:14, 11:2
**thoughtful** [2] - 6:18, 12:1
**threat** [1] - 5:10
**three** [2] - 6:1, 15:8
**throughout** [1] - 6:7
**TIMPONE** [8] - 2:8, 3:14, 11:25, 12:23, 14:7, 14:15, 14:21, 14:24
**Timpone** [3] - 3:14, 11:24, 14:4
**Title** [1] - 1:23
**today** [1] - 14:1

**traditional** [1] - 13:12
**treble** [1] - 13:12
**TRENTON** [1] - 1:12
**tried** [2] - 4:12, 15:5
**tries** [1] - 10:2
**trivializing** [1] - 12:6
**true** [1] - 1:23
**try** [1] - 6:12
**trying** [6] - 6:15, 10:22, 12:20, 13:5, 13:6, 14:12
**turn** [1] - 3:22
**two** [2] - 8:1, 10:5

## U

**U.S** [4] - 1:15, 1:25, 4:23, 5:1
**U.S.C** [1] - 1:23
**UMDMJ** [2] - 4:8, 8:5
**UMDNJ** [8] - 3:16, 4:18, 4:24, 5:8, 7:18, 9:12, 13:21, 14:3
**under** [6] - 4:18, 6:11, 6:21, 6:22, 8:19, 10:6
**undercuts** [1] - 5:20
**United** [1] - 12:23
**UNITED** [2] - 1:1, 1:4
**universities** [1] - 13:9
**UNIVERSITY** [1] - 1:7
**university** [3] - 13:6, 13:17, 13:24
**University** [3] - 3:2, 7:18, 14:8
**unless** [1] - 3:12
**unrepresented** [1] - 13:23
**unwarranted** [1] - 13:9
**up** [6] - 4:23, 6:15, 8:15, 9:4, 10:22, 14:12

## V

**vacate** [1] - 9:17
**value** [1] - 14:13
**versus** [1] - 3:1
**viable** [1] - 8:12
**vice** [1] - 12:10
**viewpoint** [1] - 14:14
**Vs** [1] - 1:6

## W

**WALTER** [1] - 2:8
**Walter** [1] - 3:14

**wants** [1] - 3:12
**Washington** [1] - 5:4
**weeks** [1] - 15:8
**West** [1] - 14:7
**whole** [1] - 6:10
**Wigenton's** [1] - 6:23
**wildly** [1] - 12:6
**wish** [1] - 3:20
**wrapped** [1] - 9:4

## Y

**year** [2] - 8:22, 8:24
**years** [2] - 4:11, 6:1